TD AMERITRADE, INC., Plaintiff,

v.

McLAUGHLIN, PIVEN, VOGEL SECU-RITIES, INC., Steven D. Ircha, and William J. Pickert, Defendants.

Civil Action No. 3603–CC.

Court of Chancery of Delaware.

Submitted: June 13, 2008.
Decided: July 24, 2008.

Arthur L. Dent and Scott B. Czerwonka, of Potter Anderson & Corroon LLP, Wilmington, Delaware; of Counsel: Theodore R. Snyder, of Krebsbach & Snyder, P.C., New York, New York, Attorneys for TD Ameritrade, Inc.

Aimee M. Czachorowski, of Duane Morris LLP, Wilmington, Delaware; OF

COUNSEL: Loren Schechter and John Dellaportas, of Duane Morris LLP, New York, New York; David E. Robbins, of Kaufmann, Feiner, Yamin, Gildin & Robbins, LLP, New York, New York, Attorneys for McLaughlin, Piven, Vogel Securities, Inc. and Steven D. Ircha.

Stephen A. Hampton, of Grady & Hampton, LLC, Wilmington, Delaware, Attorney for William J. Pickert.

## OPINION

CHANDLER, Chancellor.

## I. BACKGROUND

William J. Pickert is ninety-six years old, nearly blind, extremely hard of hearing, and confined to a wheelchair. Starting in 1987, Pickert held an investment account with MPV Securities. At different times, various brokers handled his account, and in 1993 it was assigned to Steven D. Ircha. Shortly thereafter, a junior associate of Ircha, Vikram Manhas, took over Pickert's account. Manhas remained Pickert's sole broker until he left MPV in 2005. While acting as Pickert's broker, Manhas swindled Pickert out of $400,000. This duplicity occurred in two stages. First, in 2001, Manhas transferred bonds valued at approximately $160,000 from Pickert's MPV account to an account that Manhas had opened at Ameritrade under the false name of "Emmanuel Tramond." Manhas controlled the Tramond account and used the funds therein for his own purposes. Second, in 2004, Manhas transferred bonds valued at approximately $240,000 from Pickert's MPV account to another account that Manhas had opened at Ameritrade under Pickert's name without Pickert's knowledge and through the use of forged documents. As with the Tramond account, Manhas used the $240,000 for himself. Pickert did not realize anything had happened at the time of either transfer. The illegal transfers were not discovered until after Manhas had left MPV in 2005. Ultimately, the state of Delaware brought criminal charges against Manhas, but he has since fled the United States.

On May 17, 2006, Pickert filed a complaint against MPV and Ameritrade in the Superior Court, asserting claims for violations of the Delaware Consumer Fraud Act, the Delaware Securities Act, and the federal Rule 10b–5, as well as common law claims of negligence and breach of contract. Because Pickert had entered into a predispute arbitration agreement in connection with his status as a customer of MPV, Pickert was forced to amend his suit on August 2, 2006, dropping MPV Securities from the complaint. Ameritrade offered to participate in the arbitration in order to resolve the entire dispute in one proceeding, but Pickert rejected that offer. On October 13, 2006, Ameritrade moved to dismiss the amended complaint or, in the alternative, to stay the lawsuit pending the resolution of the arbitration. The court agreed to stay the suit and it remains stayed today.

On September 5, 2006, Pickert commenced an arbitration before the National Association of Securities Dealers ("NASD") against MPV. On November 17, 2006, MPV submitted its answer to Pickert's claims denying liability and alleging a third-party claim for contribution against Ameritrade. Although Ameritrade was not a party to any sort of arbitration agreement with MPV or Pickert, Ameritrade was obligated by NASD rules to arbitrate the claim alleged against it by MPV because both MPV and Ameritrade were NASD member firms. Ameritrade unsuccessfully sought to have the contribution claim asserted against it dismissed, and the arbitration panel proceeded with the case. The panel refused, over the

objection of MPV and Ircha, to compel Pickert to testify, and instead allowed, again over the objection of MPV and Ircha, a videotaped deposition of Pickert into evidence.

On February 8, 2008, the arbitration panel issued its decision. The panel concluded that MPV and Ircha were negligent, that "the Delaware Consumer Fraud Act applied to these facts and that MPV and Ircha are jointly liable for those actions." The panel directed MPV to pay Pickert compensatory damages of $160,000 with respect to the bonds stolen in 2001, plus interest in the sum of $49,082.98; compensatory damages of $240,000 for the bonds stolen in 2004, plus interest in the sum of $43,839.27; attorneys' fees of $55,187.50 pursuant to the Delaware Consumer Fraud statute and the contract between Pickert and MPV; $1,200,000 of "treble damages" pursuant to the Consumer Fraud Act; and reimbursement of Pickert's $250 filing fee. With respect to the third-party contribution claim against Ameritrade, the panel determined that Ameritrade was liable to MPV for 50% of the damages it owed to Pickert.

On March 7, 2008, Ameritrade commenced this action for vacatur of the Award. One month later, Pickert filed an answer, counterclaim, and third-party claim against MPV. On April 18, 2008, MPV filed an answer, counterclaim, and cross claim. Following negotiations between counsel, the parties agreed that all of the outstanding claims, counterclaims, and cross claims could be resolved through motions for summary judgment.

The parties' contentions may be briefly summarized. Pickert asks the Court to uphold the award of the arbitration panel. Pickert argues that Ameritrade and MPV are impermissibly seeking *de novo* review of the award and stresses that neither Ameritrade nor MPV has met the statutory requirements for vacatur. MPV and Ircha contend that the arbitration award must be modified for three reasons. First, they argue that the arbitration panel exhibited a manifest disregard of the law by finding them liable for a violation of the Delaware Consumer Fraud Act when the panel only found them to be negligent. Second, they argue that the arbitration panel ignored key evidence by refusing to compel Pickert's testimony during the evidentiary hearing. Third, they contend that the panel clearly disregarded the law by awarding, in effect, quadruple damages instead of triple damages. Finally, Ameritrade challenges the panel's decision to hold it liable for half of the damages awarded under the Consumer Fraud Act, arguing that the panel decided an issue that was not properly before it because no party made a claim at arbitration against Ameritrade under that Act.

## II. STANDARDS

■ Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."[1] A motion for summary judgment is the "common [method] for this court to determine whether to vacate or confirm an arbitration award."[2] This is true under either the Delaware Uniform Arbitration Act[3] or the Federal Arbitration Act

---

1. Ct. Ch. R. 56(c).

2. *Beebe Med. Ctr., Inc. v. InSight Health Servs. Corp.*, 751 A.2d 426, 431 (Del.Ch.1999).

3. *See, e.g., Blank Rome LLP v. Vendel*, C.A. No. 19355, 2003 WL 21801179, at *3 (Del.Ch.

Aug. 5, 2003) ("Summary judgment is an appropriate vehicle to review an arbitration award, because the complete arbitration record is before the Court and a *de novo* hearing is not available to determine whether any

("FAA").[4] Although Ameritrade filed its complaint pursuant to 10 *Del. C.* § 5714,[5] the parties have briefed this dispute as though the FAA applies.[6] The Federal Arbitration Act provides that a court must confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed" by other provisions of the Act.[7] Those other provisions enumerate specific circumstances under which an arbitration award may be vacated or modified; the FAA does not provide for a "general review for an arbitrator's legal errors." [8] Under the FAA, a court may vacate an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[9]

Moreover, the FAA authorizes courts to modify arbitration awards in the following circumstances:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(a) Where the award is imperfect in matter of form not affecting the merits of the controversy.[10]

---

statutory exception authorizing vacating the award is applicable.").

4. *See, e.g., Sullivan v. El Paso Corp.,* No. H–06–2948, 2007 WL 1032349, at *2 (S.D.Tex. Apr. 2, 2007).

5. Section 5714 is a provision of the Delaware Uniform Arbitration Act, which applies only when the parties enter "an agreement ... providing for arbitration in this state." 10 *Del. C.* § 5702(a); *see also Orner v. Country Grove Inv. Group, LLC,* C.A. No. 2245–VCS, 2007 WL 3051152, at *6 (Del.Ch. Oct. 12, 2007). Although none of the parties submitted a copy of the arbitration agreement to the Court, it appears that the agreement did not specifically call for arbitration in Delaware; it just happened to occur here because Pickert lives here.

6. *See, e.g.,* TD Ameritrade's Mot. for Summ. J. at 10 n. 4 ("There is no dispute among the parties that the FAA applies in this state court proceeding."); *cf. Pers. Decisions, Inc. v. Bus. Planning Sys., Inc.,* C.A. No. 3213–VCS, 2008 WL 1932404, at *6 (noting that state arbitration laws displace the Federal Arbitration Act only when the parties "clearly evidence their intent to be bound by such rules"). Because all of the parties here have cited and relied on the Federal Arbitration Act, and because there is no evidence on the record whatsoever that the parties intended to be bound by the Delaware Act instead, I will apply the rules of the FAA. *See Moss v. Prudential–Bache Securities, Inc.,* 581 A.2d 1138, 1139 (Del.1990) ("The Federal Arbitration Act clearly vests concurrent subject matter jurisdiction in both the state and federal district courts.").

7. 9 U.S.C. § 9 (West 2008).

8. *Hall St. Assocs., L.L.C. v. Mattel, Inc.,* —— U.S. ——, ——, 128 S.Ct. 1396, 1404, 170 L.Ed.2d 254 (2008).

9. 9 U.S.C. § 10(a).

10. 9 U.S.C. § 11.

The Supreme Court has recently held that these statutorily enumerated circumstances are the only circumstances under which a court may grant vacatur or modification under the FAA.[11] Of course, "[n]either the FAA nor the Delaware Uniform Arbitration Act derogates this Court's inherent equity jurisdiction to enforce, modify or vacate arbitration awards."[12]

 Arbitration awards, however, are not lightly disturbed, and "Courts must accord substantial deference to the decisions of arbitrators."[13] When considering "whether the arbitrator exceeded its authority," the Court must "resolve all doubts in favor of the arbitrator."[14] In fact, "[a] court's review of an arbitration award is one of the narrowest standards of judicial review in all of American jurisprudence."[15] When "an arbitration award rationally can be derived from either the agreement of the parties or the parties' submission to the arbitrator, it will be enforced."[16] Moreover, there is a presumption that the arbitration panel acted within the scope of its authority, and "this presumption may not be rebutted by an ambiguity in a written opinion."[17] To successfully convince the Court to vacate the award of an arbitration panel, the movant must show "something beyond and different from a mere error in the law or failure on the part of the arbitrators to under-

**11.** *Hall St. Assocs., L.L.C. v. Mattel, Inc.,* —— U.S. ——, ——, 128 S.Ct. 1396, 1404, 170 L.Ed.2d 254 (2008) ("[T]he text compels a reading of the §§ 10 and 11 categories as exclusive. To begin with, even if we assumed §§ 10 and 11 could be supplemented to some extent, it would stretch basic interpretive principles to expand the stated grounds to the point of evidentiary and legal review generally."); *see also Rogers v. KBR Technical Servs. Inc.,* No. 08–20036, 2008 WL 2337184, at *2 (5th Cir.2008) ("The Supreme Court has recently held that the provisions of the FAA are the exclusive grounds for expedited vacatur and modification of an arbitration award, which calls into doubt the non-statutory grounds which have been recognized by this Circuit."); Thomas E.L. Dewey and Kara Siegel, *'Hall Street' and the Shrinking Scope of Judicial Review of Arbitral Awards,* N.Y. L.J., May 15, 2008, at 24 ("In a 6–3 decision, the Court held that the statutory grounds for vacating or modifying an arbitral award, laid out in §§ 10 and 11 of the FAA, respectively, are the sole grounds for judicial review of an award. In so doing, the Court also appeared to question a doctrine called 'manifest disregard of the law.' That doctrine has been applied by federal courts in various circuits, including the U.S. Court of Appeals for the Second Circuit in New York, to provide substantive judicial review of last resort to arbitration awards that willfully and clearly depart from well-established law.").

**12.** *SBC Interactive, Inc. v. Corporate Media Partners,* C.A. No. 16397, 1998 WL 749446, at *1 (Del.Ch. Oct. 7, 1998); *see also Hall St. Assocs.,* 128 S.Ct. at 1406 ("In holding that §§ 10 and 11 provide exclusive regimes for the review provided by the statute, we do not purport to say that they exclude more searching review based on authority outside the statute as well.").

**13.** *Kashner Davidson Sec. Corp. v. Mscisz,* 531 F.3d 68, 70 (1st Cir.2008); *see also Totes Isotoner Corp. v. Int'l Chem. Workers Union Council,* No. 07–3577, 2008 WL 2699923, at *6 (6th Cir. July 8, 2008) ("[C]ourts play only a limited role when asked to review the decision of an arbitrator.")(quoting *Tenn. Valley Auth. v. Tenn. Valley Trades & Labor Council,* 184 F.3d 510, 514 (6th Cir.1999) (per curiam)).

**14.** *Executone Info. Sys., Inc. v. Davis,* 26 F.3d 1314, 1320 (5th Cir.1994).

**15.** *Way Bakery v. Truck Drivers, Local No. 164,* 363 F.3d 590, 593 (6th Cir.2004).

**16.** *Brennan v. CIGNA Corp.,* Nos. 06–5027, 06–5124, 2008 WL 2441049, at *4 (3d Cir. June 18, 2008).

**17.** *Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.,* 409 F.3d 574, 580 (3d Cir.2005) (quoting *Roadway Package Sys., Inc. v. Kayser,* 257 F.3d 287, 301 (3d Cir.2001)).

stand or apply the law."[18] This Court has noted that an arbitration panel's decision may be vacated if the panel, "in manifest disregard of the law, [was] cognizant of the controlling law but clearly chose to ignore it in reaching [its] decision"[19] This Court has also noted, however, that "[m]ere error of law or fact is . . . not sufficient grounds to vacate and award," and that "[i]t is recognized that inaccuracies as to the law or facts are possible and their existence is accepted implicitly be an agreement to submit the dispute to arbitration."[20] In sum, "the Court is not to pass an independent judgment on the evidence or applicable law," and "[i]f any grounds for the award can be inferred from the facts on the record, the Court must presume that the arbitrator did not exceed his authority and the award must be upheld."[21]

## III. ANALYSIS

The motions for summary judgment filed by MPV and TD Ameritrade ask the Court to vacate and modify the arbitration panel's award based on several theories. First, MPV and Ircha seek to vacate the arbitration award because the panel refused to compel Pickert to testify at the evidentiary hearing, and therefore failed to consider pertinent evidence. Second, MPV and Ircha seek to vacate the portion of the award based on the Delaware Consumer Fraud Act ("DCFA"), arguing that the act was inapplicable because there was no finding of fraud. Third, to the extent the award under the DCFA is valid, MPV and Ircha seek to modify it, claiming that the panel miscalculated the treble damages. Finally, TD Ameritrade seeks to vacate the portion of the award directing it to pay 50% of the trebled damages because no party to the arbitration filed a claim against Ameritrade under the DCFA. I will address each argument in turn.

### A. Pickert's Testimony

 MPV and Ircha contend that the arbitration award should be vacated because "the arbitrators were guilty . . . in refusing to hear evidence pertinent and material to the controversy."[22] Specifically, the arbitration panel refused to compel the 96–year–old, wheelchair-bound, nearly deaf and blind Pickert to testify at the evidentiary hearing and instead admitted into evidence a videotaped deposition over the objection of MPV and Ircha. The deposition was taken in the course of Pickert's litigation against TD Ameritrade and Pickert was cross-examined by counsel for Ameritrade. Moreover, counsel for MPV and Ircha were invited to attend and participate in that deposition but they declined to do so.

 Certainly, in refusing to compel Pickert to testify and subject himself to cross examination by counsel for MPV and Ircha, the arbitration panel did refuse to hear evidence pertinent to the controversy. However, the mere "refusal to hear evidence does not automatically require the vacatur of an award: '[i]t is well settled that arbitrators are afforded broad discretion to determine whether to hear evi-

18. *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 208 (2d Cir.2002) (quoting *Saxis S.S. Co. v. Multifacs Int'l Traders, Inc.*, 375 F.2d 577, 582 (2d Cir.1967)).

19. *Daisy Const. Co. v. Mumford & Miller Concrete, Inc.*, C.A. No. 661–N, 2005 WL 1653943, at *3 (Del.Ch. June 30, 2005).

20. *Falcon Steel Co. v. HCB Contractors, Inc.*, C.A. No. 11557, 1991 WL 50139, at *2 (Del. Ch. Apr. 4, 1991).

21. *Audio Jam, Inc. v. Fazelli*, C.A. No. 14368, 1997 WL 153814, at *1 (Del.Ch. Mar. 20, 1997).

22. 9 U.S.C. § 10(a)(3).

dence.' " [23] Although cross-examining an adverse witness is a fundamental right,[24] "[o]nly the most egregious error which resulted in adversely affecting the rights of a party would justify ... and require vacatur of an award." [25]

Here, MPV and Ircha have failed to prove that they were "denied a fundamentally fair hearing and consequently suffered prejudice." [26] Most importantly, the arbitration panel's written award itself states that "[t]he Panel ruled that Claimant's sworn testimony was, at best, neutral for Claimant." [27] Consequently, there is no evidence that MPV and Ircha "suffered prejudice" as a result of the admission of Pickert's deposition testimony. Moreover, there is no evidence that the Arbitration panel's refusal to compel the feeble and elderly Pickert to testify in person constituted a "most egregious error." MPV and Ircha complain that they were denied the fundamental right to cross examine an adverse witness, but the evidence here shows that counsel for both MPV and Ircha were given an opportunity to cross examine Pickert at his videotaped deposition; MPV and Ircha simply declined to do so. Because they have failed to demonstrate that the hearing was fundamentally unfair, MPV and Ircha's motion for summary judgment under 9 U.S.C. § 10(a)(3) is denied.

### B. The Delaware Consumer Fraud Act

■ MPV and Ircha further argue that the portion of the award granting damages under the Delaware Consumer Fraud Act must be vacated because the arbitration panel acted in manifest disregard of the law. In support of this argument, MPV and Ircha point to the written award issued by the panel. In it, the panel concluded that "Respondents MPV and Ircha were negligent," that "[t]he Delaware Consumer Fraud Act applied to these facts and Respondents MPV and Ircha are jointly liable for those actions," and that "[a]ll of Claimant's other claims are denied." [28] MPV and Ircha argue that these three statements demonstrate that the arbitration panel acted in manifest disregard of the law, because the Delaware Consumer Fraud Act does not punish acts of mere negligence.[29] It was Manhas, they contend, who perpetrated the fraud; not MPV and not Ircha.

Nevertheless, MPV and Ircha concede that they could be held accountable for Manhas's deception by virtue of *respondeat superior* liability, but they argue

**23.** *Fiero Bros., Inc. v. Sw. Sec., Inc.*, No. 99 Civ. 3613(SWK), 2000 WL 510899, at *2 (S.D.N.Y. Apr. 28, 2000) (quoting *Areca, Inc. v. Oppenheimer & Co., Inc.*, 960 F.Supp. 52, 55 (S.D.N.Y.1997)).

**24.** *See, e.g., Torres v. Allen Family Foods*, 672 A.2d 26, 31–32 (Del.1995).

**25.** *Pompano–Windy City Partners v. Bear Stearns & Co.*, 794 F.Supp. 1265, 1277 (S.D.N.Y.1992).

**26.** *In re Consol. Arbitrations Between A.S. Seateam v. Texaco Panama, Inc.*, No. 97 CIV. 0214(MBM), 1997 WL 256949, at *7 (S.D.N.Y. May 16 1997) (noting that "an arbitration award will be vacated for misconduct in refusing to hear evidence "only if the losing party shows that he was denied a fundamentally fair hearing and consequently suffered prejudice" (quoting *Grinnell Hous. Dev. Fund Corp. v. Local 32B–32J. SEIU*, 767 F.Supp. 63, 67 (S.D.N.Y.1991)).

**27.** Answer, Countercl. and Third–Party Compl. of William J. Pickert, Ex. B at 3 [Hereinafter "Award"].

**28.** Award at 4.

**29.** 6 *Del. C.* § 2513(a) (imposing liability for "deception, fraud, false pretense, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission....").

that they cannot be vicariously liable for Manhas's actions because those actions were not performed within the scope of his employment. The seminal case in Delaware on vicarious liability is the 1962 decision of the Supreme Court in *Draper v. Olivere Paving & Construction Co.*[30] There, the Court held that an employer is liable "only when those torts are committed by the servant within the scope of his employment...."[31] The Court elaborated, explaining that it would "impose liability upon the master for his servant's intended tortious harm 'if the act was not unexpectable in view of the duties of the servant.'"[32] Furthermore, the Court specifically approved section 228 of the Restatement (Second) of Agency, which states that an employee's conduct is within the scope of employment if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master; and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.[33]

More recently, the Superior Court has cited section 229 of the Restatement to list factors a court should consider in determining whether an employee's conduct is within the scope of employment. Those factors include "whether or not the act is one commonly done by such servants; the time, place and purpose of the act; wheth-

er or not the act is outside the enterprise of the master; whether or not the master has reason to expect that such an act will be done; the similarity in quality of the act done to the act authorized; the extent of departure from the normal method of accomplishing an authorized result; and whether or not the act is seriously criminal."[34]

Here, the employee, Manhas, was charged with maintaining and managing the investment accounts of Pickert, a client of the employer, MPV. In the course of his employment, Manhas necessarily had access to Pickert's investments, and Manhas necessarily traded those investments. In the process of his dealings with Pickert's accounts, Manhas helped to generate commissions of $290,336.00 for MPV. On two occasions while dealing with Pickert's accounts, Manhas stole bonds. One might reasonably argue that the circumstances track the language of the Restatement, because dealing with Pickert's bonds was the kind of work Manhas was "employed to perform," because his theft occurred "substantially within the authorized time and space limits" of MPV, and because the illegal activity was "actuated, at least in part, by a purpose to serve the master" since Manhas was generating commissions for MPV.[35] Furthermore, one might reasonably argue that Manhas's theft "was not unexpectable"[36] in light of the fact that MPV's own Compliance and Supervisory Procedures Manual warned of the need to supervise employees like Manhas lest vio-

---

**30.** 181 A.2d 565 (Del.1962).

**31.** *Id.* at 569.

**32.** *Id.* (quoting Restatement (Second) of Agency § 245).

**33.** *Draper,* 181 A.2d at 570 (quoting Restatement (Second) of Agency § 228(1)).

**34.** *Simms v. Christina School Dist.,* C.A. No. 02C–07–043 JTV, 2004 WL 344015, at *5 (Del.Super. Jan. 30, 2004).

**35.** *See* Restatement (Second) of Agency § 228(1).

**36.** *Draper,* 181 A.2d at 569.

lations occur.[37]

Ultimately, however, this Court does not need to decide whether or not Manhas was acting within the scope of his employment because it need not engage in a *de novo* review of the arbitration panel. The question is close enough to conclude that the panel did not act in manifest disregard of the law when it held MPV and Ircha liable under the Delaware Consumer Fraud Act.[38] The written award issued by the panel did not articulate this vicarious liability theory and did say only that MPV and Ircha were negligent, but "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award."[39] Indeed, "[a]rbitrators have no obligation to the court to give their reasons for an award."[40] Consequently, the award will not be vacated.

### C. Treble Damages

MPV and Ircha also contend that the panel made a blatant error when calculating damages under the Delaware Consumer Fraud Act. The DCFA provides for treble damages in certain circumstances: "If a private cause of action is brought by the victim of a violation of this subchapter, and said victim was 65 years of age or older or a disabled person when the violation occurred, the victim shall be entitled to recover 3 times the amount of the victim's compensatory damages if a violation of this subchapter is established. Such treble damages shall be in addition to any other damages to which the victim is entitled pursuant to common law or other provisions of the Delaware Code."[41] Here, Pickert was over the age of 65 at the time of the offending conduct, and the arbitration panel apparently decided to award treble damages pursuant to this provision. In the award, the panel wrote, "Respondents MPV and Ircha are liable, jointly and severally, and shall pay to Claimant treble damages in the sum of $1,200,000.00 pursuant to the Delaware Consumer Fraud statute."[42] This declaration, however, was in addition to earlier statements instructing MPV and Ircha to pay compensatory damages for the bonds stolen in 2001 and 2004. In other words, the arbitration panel awarded quadruple damages.

The FAA authorizes courts to issue orders to modify or correct arbitra-

37. *See* Pickert's Mot. for Summ. J., Ex. 3, at 13; *see also* RESTATEMENT (THIRD) OF AGENCY § 7.07 ("An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control."). Here, Manhas was assigned to manage the Pickert account and MPV's compliance manual indicates that MPV thought it could control the conduct of its employees with respect to their dealings with client accounts.

38. *Cf. Screpesi v. Draper–King Cole, Inc.*, C.A. No. 95C–05–029, 1996 WL 769344 (Del.Super. Dec. 27, 1996). In *Screpesi*, Judge Graves denied an employer's motion for summary judgment after concluding that a jury could find the employee, a truck driver, was acting within the scope of his employment when he punched another motorist during a confrontation. Having determined that he could not rule the action was outside the scope of employment as a matter of law, Judge Graves allowed the case to move forward to trial. Analogously, I cannot conclude as a matter of law that Manhas was acting outside the scope of his employment when he stole bonds from Pickert and, therefore, I will not vacate the panel's award.

39. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

40. *Id.*

41. 6 *Del. C.* § 2583(b).

42. Award at 4.

tion awards "[w]here there was an evident material miscalculation of figures." [43] Further, "the order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties." [44] Courts apply the modification power carefully, and "[w]here no mathematical error appears on the face of the award ... an arbitration award will not be altered." [45] However, "[w]hen an arbitration award orders a party to pay damages that have already been paid or which are included elsewhere in the award, a court may modify the award. Double recovery constitutes a materially unjust miscalculation which may be modified under section 11 of the Federal Arbitration Act." [46]

Here, there was a mathematical error on the face of the award, and this error will result in a double recovery for Pickert. The award grants both compensatory damages for the stolen bonds *and* an additional award of treble damages. The DCFA, however, does not permit quadruple damages. The arbitration panel either committed a mathematical error or granted an impermissible double recovery. Either way, the award must be modified to provide for treble damages alone.

### D. Contribution

TD Ameritrade asks the Court to vacate the portion of the award directing Ameritrade to pay 50% of the damages awarded under the DCFA because no party to the arbitration made a claim against Ameritrade pursuant to that statute. In its award, the arbitration panel wrote, "Third–Party Respondent Ameritrade is jointly liable to respondents MPV and Ircha for the damages of Claimant and shall indemnify Respondents MPV and Ircha for 50% of the damages owed to Claimant." [47] The award contemplates that 50% of the damages amounts to $879,737.22, and therefore holds Ameritrade accountable for 50% of the damages awarded under the DCFA. In so holding, Ameritrade argues, the arbitrators "exceeded their powers." [48] The basis of this argument is that neither Pickert, MPV, nor Ircha formally made a DCFA claim against Ameritrade in the arbitration. [49] Additionally, to the extent the panel found Ameritrade was a joint tortfeasor, Ameritrade argues that the panel acted in manifest disregard of the law because it owed no duties to a noncustomer.

Ameritrade's arguments, however, are unpersuasive. First, the mere fact that no one formally filed a claim under the DCFA against Ameritrade in the arbitration is irrelevant. Pickert filed a DCFA claim against MPV, and MPV filed a claim for contribution against Ameritrade; that contribution claim properly brought Ameritrade before the arbitration panel. [50] Sec-

**43.** 9 U.S.C. § 11(a); *see also Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1147 n. 8 (10th Cir.2007) ("Section 11 permits a court to modify an award to correct a mistaken calculation or other factual error....").

**44.** 9 U.S.C. § 11.

**45.** *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir.1998).

**46.** *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir.1994).

**47.** Award at 4.

**48.** 9 U.S.C. § 10(a)(4).

**49.** Pickert does, however, have a DCFA claim pending against Ameritrade in the Superior Court action.

**50.** *Cf. Custom Decorative Moldings, Inc. v. Innovative Plastics Tech., Inc.*, C.A. No. 17592, 2000 WL 1273301, at *8 (Del.Ch. Aug. 30, 2000) (refusing to vacate an arbitration award finding an individual respondent jointly and severally liable "after a full factual hearing at which [that individual respondent] was represented and had the opportunity to present evidence").

ond, Ameritrade has failed to prove that the panel acted in manifest disregard of the law. Although Ameritrade has argued strenuously—both before this Court and before the arbitration panel—that it owed no duty to Pickert because he was not a customer, there is authority to the contrary.[51] As the United States Court of Appeals for the Seventh Circuit has written, "[a]rbitration does not provide a system of 'junior varsity trial courts' offering the losing party complete and rigorous *de novo* review."[52] In the case of Ameritrade's argument regarding its duty or lack thereof to Pickert, the arbitrators were offered conflicting authority. The fact that arbitrators ultimately chose not to follow the cases cited by Ameritrade—even if they did so erroneously—is not manifest disregard of the law.

## IV. CONCLUSION

The role of this Court when reviewing an arbitration award is narrow and limited. The Court must presume that the arbitrators acted appropriately, and this presumption cannot be rebutted by simply complaining of ambiguity in the arbitra-

tors' written award. Here, MPV, Ircha, and Ameritrade have done no more than assail the reasons articulated in the arbitration panel's decision, but this showing is insufficient to vacate the award. Rather than demonstrate that the panel acted in manifest disregard of clear law, MPV, Ircha, and Ameritrade have shown only that the panel ultimately disagreed with their interpretations of the law. To disagree is not to disregard, and because they have failed to meet their heavy burden, the Court will not vacate the arbitration award. However, because the panel did make a clear mathematical error that would result in a double recovery, the amount of the award shall be reduced to treble rather than quadruple damages.

Counsel shall submit an Order that implements the above ruling within five days.

IT IS SO ORDERED.

---

51. *See, e.g., Patrick v. Union State Bank*, 681 So.2d 1364 (Ala.1996) (holding that a bank has a duty to protect a noncustomer from the criminal acts of a customer of the bank where the bank negligently allowed an imposter to open an account in the plaintiff's name).

52. *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir.1994) (quoting *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir.1993)).