COURT OF CHANCERY
OF THE
STATE OF DELAWARE

LOREN MITCHELL
MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Date Submitted: December 1, 2025
Date Decided: March 18, 2026

Shelly Fang
7121 West Craig Road, Ste. 113
Las Vegas, NV 89129

Scott B. Czerwonka, Esquire
Wilks Law, LLC
4250 Lancaster Pike, Suite 200
Wilmington, DE 19805

RE:  *Shelly Fang v. Toyota Auto Receivables 2019 Owners Trust, et al.*,
C.A. No. 2024-0008-LM

Dear Counsel and Parties,

This letter decision concerns a dispute arising from Plaintiff Shelly Fang's purchase and financing of a 2016 Toyota Highlander under a Retail Installment Sale Contract containing an arbitration provision. After Ms. Fang allegedly defaulted on her payment obligations, the parties proceeded to arbitration before the American Arbitration Association, where the arbitrator denied Ms. Fang's claims and awarded Toyota relief on counterclaims for replevin and breach of contract. Ms. Fang now seeks to vacate that award, arguing that the arbitrator exceeded his authority and denied her a fair hearing by limiting discovery and issuing a decision without an evidentiary hearing. Because the Federal Arbitration Act permits vacatur only on

narrow grounds, the Court grants Toyota's Summary Judgment motion and confirms the arbitration award.

## I.  Factual Background:

This dispute arises from a Retail Installment Sale Contract ("RISC") containing an arbitration provision, which was executed in connection with Plaintiff Shelly Fang's purchase and financing of a 2016 Toyota Highlander ("Vehicle").[1]

On March 16, 2019, Ms. Fang executed the RISC at the Manhattan Beach Toyota in Manhattan Beach, California, obligating her to make 84 monthly payments of $649.93 at 7.90% interest beginning April 15, 2019.[2] The finance manager executed the RISC and subsequently assigned it to Toyota, the assignee of the RISC.[3] Ms. Fang made several monthly payments but fell behind on payments in late 2022 and early 2023.[4] On January 31, 2023, Toyota sent Ms. Fang a Notice of Right to Cure Default, informing her she was in default, and providing her a specified time

---

[1]  D.I. 77 at 2.

[2]  *Id*. at 5.

[3]  *Id*.

[4]  *Id*.

period to cure the default.[5] Ms. Fang responded by requesting proof of a valid contract but did not cure the default.[6]

In March 2023, Ms. Fang initiated an arbitration before the American Arbitration Association ("AAA"), demanding $120,000 in damages.[7] She later filed an Amended Statement of Claims asserting, among other things, unjust enrichment, alleged violations of the Fair Credit Extension Uniformity Act ("FCEUA") and the Fair Debt Collection Practices Act ("FDCPA"), negligent and intentional infliction of emotional distress, racketeering, equitable and injunctive relief, and Truth in Lending Act ("TILA") allegations referencing 12 C.F.R. § 1026.[8] AAA appointed an arbitrator under the Consumer Arbitration Rules.[9] Toyota filed an Answer, Affirmative Defenses, and a Counterclaim alleging replevin and breach of contract.[10] On July 20, 2023, the arbitrator entered a scheduling order requiring Ms. Fang to respond to Toyota's counterclaim by August 18, 2023; Ms. Fang did not respond,

---

[5] *Id.*; D.I. 77, Ex. D at 121.

[6] D.I. 77, Ex. D at 122.

[7] *Id.* at 3.

[8] *Id.* at 4 n.3.

[9] *Id.* at 4.

[10] *Id.*

and the matter proceeded under the AAA Consumer Rules.[11]  Ms. Fang served a questionnaire on Toyota's counsel, requesting admissions about the Vehicle and Toyota.[12]  Toyota served initial disclosures and responded to Ms. Fang's questionnaire on August 9, 2023.[13]

On August 21, 2023, Toyota moved for summary disposition arguing: (1) Toyota is entitled to a return of the Vehicle; (2) Petitioner breached the terms of the RISC for failure to pay; (3) Petitioner's vapor money, racketeering, and securitization claims are frivolous and meritless; (4) Petitioner's TILA claims fail because the RISC charges are accurate on its face and Petitioner is not entitled to rescission, revocation, or cancellation of the RISC; (5) Toyota is not a debt collector and is therefore exempt from the FDCPA and FCEUA; and (6) Petitioner's unjust enrichment and negligent infliction of emotional distress claims are meritless and fail to state a cause of action.[14]

On September 29, 2023, the arbitrator issued an award in Toyota's favor, granting a writ of possession for the Vehicle and awarding $24,918.00 to Toyota on

---

[11]  D.I. 99 at 4.

[12]  D.I. 8, Ex. J.

[13]  D.I. 77 at 9;  D.I. 9, Ex. K.

[14]  D.I. 77 at 10.

its replevin and breach of contract counterclaims.[15]  This award denied Ms. Fang's Amended Statement of Claims in its entirety and did not award relief to Ms. Fang.[16]

In January 2024, Ms. Fang filed this action in the Court of Chancery seeking to vacate the arbitration award, asserting the arbitrator exceeded his powers and refused to allow discovery under 9 U.S.C. § 10(a)(3) and (4).[17]  Toyota opposed, moved for summary judgment to confirm the award, and later sought a protective order after Ms. Fang served additional discovery aimed at securitization and standing theories, among others.[18]  Toyota contends those issues were improper for post-arbitration discovery and that discovery in arbitration was appropriately limited by the RISC and the AAA Consumer Rules.[19]

Ms. Fang contends that she made monthly payments through December 10, 2022, totaling over $27,200 and that she requested debt validation on January 10, 2023.[20]  She argues the arbitration was transformed into a collection action via Toyota's counterclaim and that the arbitrator limited discovery and ruled without an

---

[15] *Id*. at 4.

[16] *Id*.

[17] *Id*. at 5.

[18] *Id*. at 6;  D.I. 29;  D.I. 35;  D.I. 36.

[19] D.I. 35.

[20] D. I. 94 at 1.

evidentiary hearing.[21]  Toyota, in turn, maintains that Ms. Fang defaulted under the RISC, that it provided a Notice of Right to Cure, that Ms. Fang did not cure or surrender the Vehicle, and that the arbitrator properly entered the award based on the record and Ms. Fang's failure to present evidence of payment.[22]

## II.    Standard of Review:

Summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[23] A motion for summary judgment is the "common [method] for this court to determine whether to vacate or confirm an arbitration award."[24]  This is true under either the Delaware Uniform Arbitration Act or the Federal Arbitration Act ( the "FAA").[25]  Generally, a court is required to uphold an arbitration award under the FAA unless other sections of the statute authorize it to vacate, modify, or correct that award.[26]

---

[21]  D.I. 77 at 6.

[22]  *Id*. at 5.

[23]  Ct. Ch. R. 56.

[24]  *Beebe Med. Ctr., Inc. v. InSight Health Servs. Corp.*, 751 A.2d 426, 431 (Del. Ch. 1999).

[25]  *See TD Ameritrade, Inc. v. McLaughlin, Piven, Vogel Sec., Inc.*, 953 A.2d 726, 730–31 (Del. Ch. 2008).

[26]  *See* 9 U.S.C. § 9 (2008).

The Court's framework and analysis in *TD Ameritrade, Inc. v. McLaughlin, Piven, Vogel Sec., Inc*. are instructive. A court's review of an arbitral award is extremely limited and highly deferential.[27] "When considering 'whether the arbitrator exceeded its authority,' the Court must 'resolve all doubts in favor of the arbitrator.' In fact, '[a] court's review of an arbitration award is one of the narrowest standards of judicial review in all of American jurisprudence.' When 'an arbitration award rationally can be derived from either the agreement of the parties or the parties' submission to the arbitrator, it will be enforced.'"[28]

Under the FAA, a court may vacate an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[29]

---

[27] *TD Ameritrade, Inc.,* 953 A.2d at 732.

[28] *Id*.

[29] 9 U.S.C. § 10(a).

Additionally, 9 U.S.C. § 11 explains that a court may modify or correct an arbitration award:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
> (a) Where the award is imperfect in matter of form not affecting the merits of the controversy.[30]

In this Court, "there is a presumption that the arbitration panel acted within the scope of its authority, and 'this presumption may not be rebutted by an ambiguity in a written opinion.'"[31]   Therefore, in order to convince the Court to vacate the award of an arbitrator "the movant must show 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.'"[32]

An arbitration award may be vacated only where the arbitrators acted in manifest disregard of the law, meaning they were cognizant of the controlling law

---

[30]  Citing *TD Ameritrade, Inc.*, 953 A.2d at 731.

[31]  *Id*. at 732.

[32]  *Id*. at 732–733.

but chose to ignore it in reaching their decision.[33]  Mere error of law or fact is not sufficient grounds to vacate an award.  In agreeing to submit a dispute to arbitration, the parties implicitly accept that inaccuracies as to the law or facts are possible.[34]

Therefore, "'the [Chancery] Court is not to pass an independent judgment on the evidence or applicable law,' and '[i]f any grounds for the award can be inferred from the facts on the record, the Court must presume that the arbitrator did not exceed his authority and the award must be upheld.'"[35]

## III.  Analysis:

Ms. Fang seeks vacatur of the arbitration award under 9 U.S.C. § 10(a)(3) and § 10(a)(4), arguing that the arbitrator exceeded his authority, and refused to hear evidence.[36]  The record does not support those arguments.

### A.  The Arbitrator Did Not Exceed His Authority

Ms. Fang argues that the arbitrator exceeded his authority by awarding Toyota relief on its counterclaims for replevin and breach of contract by effectively transforming the arbitration into a debt collection proceeding.[37]  The record shows

---

[33]  *See id.* at 733.

[34]  *See id.*

[35]  *Id.*

[36]  D.I. 1 at 3–4.

[37]  D.I. 94 at 5.

otherwise. Under the AAA Consumer Arbitration Rules, a respondent may file counterclaims arising from the same transaction or occurrence as the claimant's demand.[38] Toyota did so here. On April 12, 2023, Toyota filed an Answer, Affirmative Defenses, and Counterclaims.[39] Under the applicable AAA rules, Ms. Fang was permitted to file a response to these counterclaims but did not do so.

Ms. Fang did not file a response to Toyota's counterclaim; thus, under Consumer Rule R-5(c), the counterclaim was deemed denied and permitted to proceed within the arbitration.[40] Thereafter, Toyota filed a Motion for Summary Disposition on its counter-claims and a request for dismissal of Petitioner claims.[41] The arbitrator subsequently issued a scheduling order requiring Ms. Fang to respond to those counterclaims by August 18, 2023, but Ms. Fang again failed to respond.[42]

Because the counterclaims fell squarely within the parties' contractual relationship and arose from Ms. Fang's alleged default under the RISC, the arbitrator acted within the scope of the submission when he considered them. These counterclaims concerned rights and remedies governed by the RISC and therefore

---

[38] *See* AAA Consumer Arbitration Rule R-5(b) (2025).

[39] D.I. 99 at 4.

[40] *Id*.

[41] *Id*.

[42] *Id*.

were within the scope of the parties' arbitration agreement. As previously discussed, "[w]hen 'an arbitration award rationally can be derived from either the agreement of the parties or the parties' submission to the arbitrator, it will be enforced.'"[43] That principle applies here. The RISC itself contains an arbitration provision governed by the FAA requiring disputes related to the contract to be resolved in arbitration.[44]

As the arbitrator's actions were permissible under the FAA, the arbitrator therefore did not exceed his powers by addressing Toyota's counterclaims. The record demonstrates that those claims were procedurally proper and were presented to the arbitrator in accordance with the applicable arbitration rules.

**B.     The Arbitrator Acted Within His Discretion in Relation to Discovery**

Ms. Fang next contends that the arbitrator engaged in misconduct by limiting discovery, declining to compel additional production, and rejecting material

---

[43] *TD Ameritrade, Inc.*, 953 A.2d at 732.

[44] The RISC states that "any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1, *et al.*) and not by any state law concerning arbitration." D.I. 77, Ex. B (quoting the Arbitration Provision of the RISC on page 7 of Ex. A within this exhibit).

evidence.[45]  Ms. Fang argues that the Arbitrator's conduct ensured the outcome was predetermined rather than adjudicated.[46]

That argument fails.  The FAA does not guarantee parties the full scope of discovery available in civil litigation; instead once parties begin private arbitration, the Arbitrator has wide discretion to allow or disallow discovery.[47]  "[T]he mere refusal to hear evidence does not automatically require the vacatur of an award: it is well settled that arbitrators are afforded broad discretion to determine whether to hear evidence."[48]  An arbitrator's discovery rulings justify vacatur only if the refusal to hear evidence deprives a party of a fundamentally fair hearing.[49]

Here, the record establishes that the arbitrator allowed initial disclosures but eventually decided to limit discovery to Initial Document Disclosures under Rule 22

---

[45]  D.I. 94 at 6.

[46]  *Id.*

[47]  *See Bain Cotton Co. v. Chesnutt Cotton Co.*, 531 Fed. Appx. 500 (5th Cir. 2013).

[48]  *DoubleLine Cap. GP LLC v. Barach*, No. 2022-0415-PAF, 2024 WL 278943, at *8 (Del. Ch. Jan. 25, 2024).

[49]  See *TD Ameritrade, Inc.*, 953 A.2d at 731*; In re Consol. Arbitrations Between A.S. Seateam v. Texaco Panama, Inc.*, No. 97 CIV. 0214(MBM), 1997 WL 256949, at *7 (S.D.N.Y. May 16, 1997) (noting that "an arbitration award will be vacated for misconduct in refusing to hear evidence "only if the losing party shows that he was denied a fundamentally fair hearing and consequently suffered prejudice"" (quoting *Grinnell Hous. Dev. Fund Corp. v. Local 32B-32J. SEIU*, 767 F.Supp. 63, 67 (S.D.N.Y. 1991)).

of the Consumer Arbitration Rules.[50]  Toyota produced initial disclosures and responded to Ms. Fang's questionnaire requests during the arbitration.[51]  The arbitrator determined that additional discovery was unnecessary and limited the proceedings to the information exchanged under the applicable rules.  Accordingly, Ms. Fang cannot demonstrate that the arbitrator refused to hear material evidence or denied her a fundamentally fair hearing.  That determination fell within the arbitrator's discretion.  Because this ruling fell within the arbitrator's procedural authority, it does not justify vacatur under § 10(a)(3).

**C.     The Arbitrator Was Entitled to Resolve the Dispute Without an Evidentiary Hearing**

Ms. Fang also argues that the arbitrator acted improperly by issuing an award without conducting a full evidentiary hearing.[52]  Per the AAA Rules, "[t]he arbitrator shall determine what evidence will be admitted, what evidence is relevant, and what evidence is material to the case.  The arbitrator may also exclude evidence that the arbitrator decides is cumulative or not relevant."[53]  Additionally, "[t]he arbitrator may [also] receive and consider the evidence of witnesses by written statements

---

[50]  D.I. 77 at 9.

[51]  *Id.*, Ex. C.

[52]  D.I. 1 at 2.

[53]  AAA Consumer Arbitration Rule R-32 (2025).

rather than in-person testimony but will give this evidence only such credence as the arbitrator decides is appropriate."[54]

Toyota moved for summary disposition under Rule 33 of the Consumer Arbitration Rules and submitted documentation supporting its claims, alleging that Petitioner failed to make the payments required under the RISC.[55] Petitioner did not file a reply to the counterclaim or submit documentation demonstrating that she satisfied her payment obligations under the RISC.[56]

In light of that record, the arbitrator determined that Toyota was likely to prevail on a dispositive motion under Rule 33 and established a briefing schedule for such motions in the scheduling order.[57] Ms. Fang contends that this procedure denied her a fair hearing because she was allegedly prevented from presenting evidence and obtaining documents to support her claims. However, the AAA Rules, expressly vest the arbitrator with authority to determine what evidence is admitted and how the evidentiary record will be developed, including whether evidence will be presented through written submissions rather than live testimony.

---

[54] AAA Consumer Arbitration Rule R-33 (2025).

[55] D.I. 77 at 10.

[56] *Id.*

[57] *Id.*

Given that record, the arbitrator determined that Toyota was likely to succeed on its counterclaims and entered an award accordingly.[58]  Because the arbitration rules authorized the arbitrator to manage the evidentiary process and resolve the dispute through dispositive motion practice, the decision to proceed without a full evidentiary hearing fell squarely within the arbitrator's procedural discretion.

**D.**      **Ms. Fang's Remaining Arguments Challenge the Merits of the Award Rather Than the Arbitration Process**

Ms. Fang's complaint extensively focuses on the arbitrator's rejection of her theories regarding loan securitization.[59]  For example, Ms. Fang contends that she presented evidence of securitization through a Bloomberg terminal loan securitization audit that was allegedly supported by an affidavit from a Bloomberg auditor.[60]  According to Ms. Fang, that auditor was scheduled to testify as an expert witness at a hearing set for November 16, 2023, which she claims never occurred.[61]  However, this argument does not establish grounds for vacatur.

This argument challenges the arbitrator's evaluation of the evidence and the merits of the dispute, not the fairness of the arbitration process.  Judicial review of

---

[58]   AAA Consumer Arbitration Rule R-31(b) (2025).

[59]   *See* D. I. 1.

[60]   *Id*. at 14–15.

[61]   *Id*.

arbitration awards does not permit courts to reconsider the merits of the arbitrator's reasoning unless the FAA authorizes vacatur or modification of the award under the limited circumstances discussed above in this opinion.[62]

Even if Ms. Fang believes the arbitrator misapplied the law or misunderstood her claims, such errors do not justify vacatur. The record reflects none of those circumstances. The arbitrator reviewed the parties' submissions, considered Toyota's motion for summary disposition, and entered a final award resolving all claims before him.[63] "When 'an arbitration award rationally can be derived from either the agreement of the parties or the parties' submission to the arbitrator, it will be enforced.'"[64] That award denied Ms. Fang's claims and granted Toyota relief for replevin and breach of contract.

Because the award rationally derives from the parties' agreement and the issues submitted for arbitration, this Court must defer to the arbitrator's determination and decline Ms. Fang's request to vacate the award.

---

[62] *See* 9 U.S.C. § 11.

[63] D.I. 95, Ex. A.

[64] *TD Ameritrade, Inc.*, 953 A.2d at 732.

###### E.     Confirming the Award is Appropriate

Ms. Fang contends that the arbitration award should be vacated because, in her view, the arbitrator issued the final award without conducting the scheduled hearing and without permitting her to obtain discovery or present evidence supporting her claims.[65] She argues that the arbitrator improperly credited Toyota's position that she executed the RISC and later defaulted under its terms and that the proceedings deprived her of a fair hearing on the merits.[66] Ms. Fang further asserts that the arbitrator's refusal to allow additional discovery or hear certain evidence constitutes a *manifest disregard* of the law.[67]

The record before the Court contains the complete arbitration record and the parties' submissions regarding vacatur and confirmation. There has been no evidence presented by Ms. Fang, or in the record, to support a showing of corruption, partiality, misconduct, or an excess of arbitral authority under the FAA.[68] Instead, her arguments primarily challenge the arbitrator's factual findings and legal conclusions.

---

[65] D.I. 1 at 17-18.

[66] *Id.*

[67] *Id.*

[68] *See* 9 U.S.C. § 10(a).

Such challenges fall far short of the extraordinarily narrow standard governing judicial review of arbitration awards.[69] "In fact, '[a] court's review of an arbitration award is one of the narrowest standards of judicial review in all of American jurisprudence.' When 'an arbitration award rationally can be derived from either the agreement of the parties or the parties' submission to the arbitrator, it will be enforced.'"[70]

Ms. Fang's arguments largely rest on her assertion that the arbitrator improperly limited discovery and declined to conduct a full evidentiary hearing before issuing the award.[71] But those procedural decisions, as previously discussed, fall within the arbitrator's authority under the parties' agreement in RISC and the AAA Rules, which grant arbitrators broad discretion to manage the evidentiary record and determine whether dispositive motions may resolve the dispute.[72] The Court's role is limited to determining whether one of the narrow statutory grounds for vacatur exists.[73] Because Ms. Fang has not shown that the arbitrator refused to

---

[69] *See TD Ameritrade, Inc.*, 953 A.2d at 732.

[70] *Id.*

[71] D.I. 1.

[72] *Id.*; *Fiero Bros., Inc. v. Sw. Sec., Inc.,* No. 99 Civ. 3613(SWK), 2000 WL 510899, at *2 (S.D.N.Y. Apr. 28, 2000) (quoting *Areca, Inc. v. Oppenheimer & Co., Inc.,* 960 F.Supp. 52, 55 (S.D.N.Y. 1997)).

[73] *See* 9 U.S.C. § 10(a).

hear material evidence, acted with partiality toward her, or exceeded the authority granted by the arbitration agreement, her challenge amounts to little more than disagreement with the arbitrator's conclusions—an insufficient basis for vacatur under the FAA. Mere disagreement with the arbitrator's decision does not, without more, establish unfairness in the arbitral proceedings.

Accordingly, no genuine issue of material fact exists regarding the validity of the arbitration award, and Toyota is entitled to judgment as a matter of law confirming the award.

## IV. Conclusion

For the foregoing reasons, Ms. Fang has established no basis under the FAA to vacate or modify the arbitrator's award. The record reflects that the arbitrator acted within the authority granted by the parties' arbitration agreement and the AAA Consumer Arbitration Rules, and Ms. Fang's arguments amount to a disagreement with the arbitrator's procedural decisions and conclusions on the merits matters that fall outside the narrow scope of judicial review.

Accordingly, Toyota's Motion for Summary Judgment is GRANTED, Ms. Ms. Fang's request to vacate the arbitration award is DENIED, and the arbitration award is CONFIRMED.

This decision is subject to exceptions, which may be filed under Court of Chancery Rule 144.


Respectfully submitted,

*/s/ Loren Mitchell*

Magistrate in Chancery