PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-3475
_____

PG PUBLISHING, INC.,
d/b/a Pittsburgh Post Gazette,
Appellant

v.

THE NEWSPAPER GUILD OF PITTSBURGH,
COMMUNICATION WORKERS OF AMERICA, AFL-
CIO LOCAL 38061
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2-20-cv-00236
District Judge:  The Honorable Marilyn J. Horan
_____

Argued September 22, 2021

Before: SMITH, *Chief Judge*, McKEE, and RESTREPO,
*Circuit Judges*

(Filed: November 30, 2021)

Brian M. Hentosz
Terrence H. Murphy [ARGUED]
Littler Mendelson
625 Liberty Avenue
EQT Plaza, 26th Floor
Pittsburgh, PA 15222
        *Counsel for Appellant*

Patrick K. Lemon
Joseph J. Pass [ARGUED]
Joseph S. Pass
Jubelirer Pass & Intrieri
219 Fort Pitt Boulevard
1st Floor
Pittsburgh, PA 15222
        *Counsel for Appellee*

_____

OPINION
_____

SMITH, *Chief Judge*.

2

This appeal implicates procedural complexities at the intersection of the Labor Management Relations Act ("LMRA") and the Federal Arbitration Act ("FAA"). In many labor disputes, both statutes provide means for seeking vacatur or confirmation of arbitration awards. But they differ in several ways. They employ distinct procedural vehicles, require litigants to meet different legal standards, and—as particularly important here—prescribe separate limitations periods.

In this case, PG Publishing, Inc. ("PG") seeks to vacate the labor arbitration award at issue in this dispute, invoking both the LMRA and the FAA. 29 U.S.C. § 185(a) (LMRA Section 301); 9 U.S.C. § 10 (FAA Section 10). PG contends that even if it filed its complaint outside of the applicable limitations period for an LMRA action, it filed within the FAA's 90-day limitations period for motions to vacate an arbitration award.

Although we agree that a party may bring both an LMRA action and a FAA motion challenging or confirming certain labor arbitration awards, we conclude here that PG did not proceed by motion as required by the FAA, and so did not properly invoke that statute. We further conclude that its LMRA Section 301 action was untimely.

The District Court properly dismissed PG's complaint as untimely, so we will affirm. In reaching our decision, we clarify the procedures for seeking to vacate or confirm an arbitration award under the LMRA and under the FAA.

3

# I

We begin by comparing two procedural vehicles for seeking to vacate or confirm a labor arbitration award: civil actions, whether under LMRA Section 301 or otherwise,[1] and motions under the FAA. We do so because many labor arbitrations fall within the ambits of both the LMRA[2] and the FAA, including the arbitration at issue presented in this appeal.[3] It follows that both civil actions under the LMRA and

---

[1] Not all civil actions to confirm or vacate a labor arbitration award raise claims under the LMRA. For example, in labor disputes arising from contracts between the U.S. Postal Service and unions representing postal employees, courts have recognized a right to seek vacatur of a labor arbitration award under the Postal Reorganization Act, 39 U.S.C. § 1208(b). *E.g.*, *U.S. Postal Serv. v. Am Postal Workers Union*, 553 F.3d 686, 689 (D.C. Cir. 2009); *Houser v. Postmaster Gen. of the United States*, 573 F. App'x 141, 142 n.2 (3d Cir. 2014) (*per curiam*) ("§ 1208(b) is the analogue to section 301(a) of the Labor Management Relations Act, and the law under § 301 is fully applicable to suits brought under § 1208(b)." (quoting *Gibson v. U.S. Postal Serv.*, 380 F.3d 886, 889 n.1 (5th Cir. 2004)).

[2] The LMRA applies to labor–management relations subject to the National Labor Relations Act ("NLRA"). *Masy v. N.J. Transit Rail Operations, Inc.*, 790 F.2d 322, 325 (3d Cir. 1986) (citing 29 U.S.C. § 185 (LMRA); 29 U.S.C. § 152 (NLRA)).

[3] The FAA does not apply to labor arbitrations that are excluded by FAA Section 1. 9 U.S.C. § 1. FAA Section 1

motions under the FAA are available for seeking vacatur or confirmation of certain labor arbitration awards. *E.g.*, *Teamsters Local 117 v. United Parcel Serv.*, 966 F.3d 245, 248–50 (3d Cir. 2020) (involving a union's motion pursuant to FAA Section 9, 9 U.S.C. § 9, to confirm a labor arbitration award); *see generally Int'l Bhd. of Elec. Workers, Local No. 111 v. Pub. Serv. Co. of Colo.*, 773 F.3d 1100, 1106–07 (10th Cir. 2014) (concluding that Section 301 and the FAA are

---

excludes from the FAA's coverage contracts of employment involving "transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001) (Op. of Kennedy, J.); *id.* at 130 (Stevens, J., dissenting) (noting that this construction of FAA Section 1 was made by the Third Circuit in *Tenney Eng'g, Inc. v. Elec. Workers*, 207 F.2d 450, 452 (3d Cir. 1953) (*en banc*)).

In *Tenney*, which continues to be the law of this Circuit, we held that transportation workers are workers "who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it." *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 220–21 (3d Cir. 2019) (quoting *Tenney*, 207 F.2d at 452)).

The Union does not contend that its members are transportation workers within the meaning of FAA Section 1. Accordingly, the transportation worker exception does not apply here.

5

not "mutually exclusive" (citing *Smart v. Int'l Bhd. of Elec Workers*, 315 F.3d 721, 724–25 (7th Cir. 2002)).

Although parties can use both procedural vehicles to pursue review of arbitration awards in certain labor disputes, LMRA Section 301 actions and FAA motions produce distinct types of proceedings, prescribe different legal standards, and provide separate limitations periods.

A. Motions practice and summary proceedings under the FAA

Whereas LMRA complaints proceed as typical civil actions,[4] applications to courts under the FAA take the form of motions unless otherwise "expressly provided" in the FAA itself. 9 U.S.C. § 6. Neither FAA Section 9, which provides for confirmation of arbitration awards, nor FAA Section 10, which provides for vacatur of arbitration awards, prescribe other procedures. We have held that applications to *confirm*

---

[4] The LMRA includes a right of action under Section 301 to confirm or vacate labor arbitration awards. *Gen. Drivers, Warehousemen and Helpers v. Riss & Co.*, 372 U.S. 517, 519 (1963) (*per curiam*) (concerning action to confirm an award under Section 301); *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017) ("Section 301 . . . is understood to include a request to enforce (or vacate) an award entered as a result of the procedure specified in a collective bargaining agreement for the arbitration of grievances." (citing *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 595–96 (1960))).

an arbitration award under FAA Section 9 are to be made as motions. *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 308 (3d Cir. 2006). Likewise, we hold here that applications to vacate an arbitration award under FAA Section 10 are also to be made as motions. *See Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (FAA applications for vacatur are motions); *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1258 (7th Cir. 1992) (same); *O.R. Secs. v. Pro. Planning Ass'n*, 857 F.2d 742, 748 (11th Cir. 1988) (same).

Unlike civil actions under the LMRA, which are formal civil proceedings to which the Federal Rules of Civil Procedure are fully applicable, FED. R. CIV. P. 1, FAA Section 9 motions to confirm an arbitration award are addressed through summary proceedings, which are shorn of certain formalities such as pleadings. *Teamsters*, 966 F.3d at 254.[5] That is because FAA Section 9 "expressly provides for an 'application' for confirmation, does not instruct parties to file a complaint, and does not instruct the district court to carry on a formal judicial proceeding." *Id.* at 255 ("the Federal Rules of Civil Procedure apply only to the extent procedures are not provided for under the FAA" (citing FED. R. CIV. P. 81(a)(6)(B))).

---

[5] *See also D.H. Blair & Co, Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (noting that confirmation of an arbitration award under the FAA is a "summary proceeding") (citing *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)).

7

Although we have not previously considered whether motions to vacate result in summary proceedings, we are satisfied that our reasoning in *Teamsters* applies equally to FAA Section 10 motions to vacate an arbitration award.

Like FAA Section 9, FAA Section 10 provides that courts may vacate an arbitration award upon "application" of any party to the arbitration; does not instruct parties to file a complaint; and does not instruct the district court to carry on a formal judicial proceeding. 9 U.S.C § 10(a). And confirmation and vacatur of an arbitration award are simply opposite sides of the same FAA coin: "A court must confirm an arbitration award unless it is vacated, modified, or corrected." *Hall St.*, 552 U.S. at 582 (cleaned up). Thus, we conclude that motions to vacate under FAA Section 10 also result in summary proceedings. *Id.* (noting that an application for confirmation, vacatur, modification, or correction of an arbitration award "will get streamlined treatment as a motion" (citing 9 U.S.C. §§ 6, 9–11)); *see generally Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 27 (1983) (proceedings under the FAA are meant to follow "summary and speedy procedures").[6]

---

[6] *See also Beijing Shougang Mining Inv. Co, Ltd. v. Mongolia*, 11 F.4th 144, 160 (2d Cir. 2021) (in considering a motion to vacate, noting that "the confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court"); *Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 159 (2d Cir. 2003) ("An action at law is not identical to the summary

B.  Legal standards under FAA summary proceedings

Because FAA motions result in summary proceedings, and summary proceedings lack certain formalities such as pleadings, the pleading standards set forth in Rule 12 of the Federal Rules of Civil Procedure are inapplicable to FAA motions.  *IFC Interconsult*, 438 F.3d at 308–09.[7]  This makes intuitive sense: The pleadings stage of a civil action serves as a gateway to discovery and to the discovery tools available under the Civil Rules.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  By contrast, the summary proceedings that result from an FAA motion to confirm or vacate an arbitration award are "not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm."  *Teamsters*, 966 F.3d at 252 (quoting *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007)); *see also O.R. Secs.*, 857 F.2d at 745 (rejecting contention that an FAA proceeding

confirmation proceeding established by the FAA, which was intended to streamline the process and eliminate certain defenses.").

[7] *See also Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 46 (2d Cir. 1994) (holding that when a party "appropriately sought relief in the form of a motion, the court was not required to comply with the pleading requirements of FED. R. CIV. P. 12(b)"); *O.R. Secs.*, 857 F.2d at 748 ("The rules of notice pleading, FED. R. CIV. P. 8, do not apply to a proceeding to vacate an arbitration award, as all relief must be sought in the form of a motion.").

to vacate an arbitration award should "develop into full scale litigation, with the attendant discovery, motions, and perhaps trial"). A court can, within its discretion, decide an FAA motion without conducting a full hearing or taking additional evidence. *Legion Ins. Co. v. Ins. Gen. Agency, Inc.*, 822 F.2d 541, 542–43 (5th Cir. 1987) ("This case posed no factual issues that required the court, pursuant to the Arbitration Act, to delve beyond the documentary record of the arbitration and the award rendered.");[8] *accord Faberge*, 23 F.3d at 46.

Whereas at the pleading stage of an LMRA Section 301 action, a plaintiff's factual allegations in its complaint to vacate an arbitration award are entitled to a liberal reading,[9] a party moving to vacate an arbitration award pursuant to FAA Section 10 immediately bears the burden of proof. *Gottdiener*, 462 F.3d at 110; *Egan Jones Ratings Co. v. Pruette*, No. 16-

---

[8] In so concluding, the Fifth Circuit noted that the Civil Rules do not require district courts to conduct full hearings on parties' motions. *Legion*, 822 F.2d at 543 (citing FED. R. CIV P. 43(e), 78). Here, we need not decide which of the Civil Rules may apply to summary proceedings under the FAA. Instead, we simply reiterate that the Rules "apply in FAA proceedings only to the extent procedures are not provided for under the FAA." *Teamsters*, 966 F.3d at 255 (citing FED. R. CIV. P. 81(a)(6)(B)).

[9] *Cf. ABF Freight Sys, Inc. v. Int'l Bhd. of Teamsters*, 728 F.3d 853, 857 (8th Cir. 2013) (applying the Rule 12(b)(6) standard to an LMRA Section 301 action for breach of a labor agreement).

mc-105, 2017 WL 345633, at \*1 (E.D. Pa. Jan. 24, 2017); *cf. O.R. Secs.*, 857 F.2d at 745 (disagreeing that "the burden of dismissing" an FAA motion to vacate is "on the party defending the arbitration award"). There is thus a formal difference between the standards applicable to an LMRA Section 301 complaint and an FAA Section 10 motion, even if both are brought simultaneously by a single party to seek vacatur of the same arbitration award based on all of the same arguments. But in practice, that formal distinction may often be of little significance. It may well be the case that many LMRA Section 301 actions to vacate can be decided as a matter of law on the pleadings. *E.g.*, *Prospect CCMC, LLC v. CCNA/Pa. Ass'n of Staff Nurses and Allied Pros.*, Misc. No. 18-174, Civ. Action No. 18-4039, 2019 WL 342713, at \*8 (E.D. Pa. Jan. 28, 2019). ("As this matter seeks review of a labor arbitration award, there are no material issues of fact presented, but rather questions as to which party is entitled to a judgment as a matter of law.").

## C. Statutes of limitations for FAA motions

LMRA Section 301 actions and FAA motions also draw different statutes of limitations. FAA motions are governed by the statutes of limitations set forth in the FAA itself. As relevant here, FAA Section 12 provides a 90-day limitations

11

period for motions to vacate, modify, or correct an award.[10] 9 U.S.C. § 12**.**

By contrast, as a matter of federal law, "actions to vacate or confirm an arbitration award under Section 301 [are] governed by the relevant state statute of limitations." *Serv. Emps. Int'l Union v. Office Ctr. Servs., Inc.*, 670 F.2d 404, 407–09 (3d Cir. 1982) ("*SEIU*") (applying *United Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696 (1966)). In choosing the relevant state statute of limitations, the law of the forum state generally controls. When it is Pennsylvania law that is relevant to a Section 301 action to vacate an arbitration award, we have held that the applicable state statute of limitations is the 30-day period prescribed by 42 PA. CONS. STAT. § 7314(b). *Eichleay Corp. v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 944 F.2d 1047, 1062 (3d Cir. 1991). Thus, because the FAA's statutes of limitations are not the "relevant state statute of limitations," the FAA's statutes of limitations do not apply to Section 301 actions to vacate or confirm an arbitration award. *Id.* at 1060–62 (citing *SEIU*, 670 F.2d at 406–08).

---

[10] For a given arbitration award, the FAA's limitations period for motions to vacate is not always longer than the state limitations period that would apply to a Section 301 action to vacate. *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 64 (1981) ("Obviously, if New York had adopted a specific 6-year statute of limitations for employee challenges to awards . . . , we would be bound to apply that statute under the reasoning of *Hoosier Cardinal*[, 383 U.S. 696 (1966)].")

12

\*          \*          \*

Bearing in mind these similarities and differences between LMRA Section 301 actions and FAA motions, we turn to the present dispute between PG and the Newspaper Guild of Pittsburgh ("the Union").

II

This is an appeal from the District Court's dismissal, on statute of limitations grounds, of PG's challenge to its loss in labor arbitration. The parties' dispute concerns how much money PG must contribute to its employees' health insurance fund. PG publishes *The Pittsburgh Post-Gazette*, and the Union collectively bargains with PG on behalf of certain PG employees. Union employees are provided health insurance from the Western Pennsylvania Teamsters and Employers Welfare Fund ("the Fund").

From 2014 to 2017, the parties were subject to a collective bargaining agreement that established PG's required contribution to the Fund for 2015 and capped increases in contributions at 5 percent per year for 2016 and 2017. Exhibit B of the parties' CBA reported a specific schedule of health benefits available under the health insurance plan. For the 2016 benefit year, the Fund increased rates by 5.9 percent. PG contributed 5 percent, and the Union addressed the remaining 0.9 percent by adjusting the deductibles in the Exhibit B schedule of benefits. For the 2017 benefit year, the Fund increased rates by 5 percent, and PG paid the entirety of the increase.

13

On March 31, 2017, the parties' CBA expired, although the terms remain in effect due to a contractual "evergreen" provision. The parties bargained over, but did not reach, a successor agreement. In the meantime, the Fund increased rates for the 2018, 2019, and 2020 benefit years. PG did not cover any increases; instead, it maintained its contributions at the 2017 benefit year level.

During this time, the parties brought their dispute to parallel proceedings. One, before the National Labor Relations Board, concerned whether PG violated its federal labor law duty to maintain the status quo in declining to cover the Fund's rate increases. The Board concluded that there was no labor law violation.

The other proceeding, an arbitration pursuant to the CBA's grievance process, presented three issues: (1) whether the Union's grievance was arbitrable; (2) whether PG breached the CBA in declining to cover the Fund's rate increases; and (3) if PG did breach the CBA, what the remedy should be. In its grievance, the Union argued that the CBA itself required PG to maintain the Fund benefits set forth in Exhibit B of the CBA. The Union also raised a past practice argument: "The parties['] practice has been the Employer continued to pay whatever was necessary to maintain the benefits in the parties['] Agreement." In response, PG argued that the Union's grievance was untimely and barred by laches; that the CBA did not provide for increases in contribution rates after January 2017; and that Section 302 of the LMRA, 29 U.S.C. § 186, prohibited PG from paying the increases in contribution rates.

14

In October 2019, after the NLRB had issued its ruling, the parties arbitrated the Union's grievance before Arbitrator Jay Nadelbach. In November 2019, the parties corresponded with Arbitrator Nadelbach regarding the due date for post-hearing briefs. Counsel for PG proposed a December 20, 2019 due date. But Counsel for the Union expressed concern with PG's proposed due date, considering it as "too far out in light of the fact [that] the Health and Welfare Fund will most likely need a response concerning this issue by January 1, 2020." In response, Arbitrator Nadelbach communicated that he could issue an award by December 31, 2019 if he received the briefs by December 20, 2019. Both parties agreed to the Arbitrator's proposed timing.

On December 30, 2019, Arbitrator Nadelbach issued the Arbitration Award by email with the note: "as promised, by the end of this calendar year." The December 2019 Award consisted of five numbered paragraphs. Two contained the rulings that (1) the grievance was arbitrable and not time barred and (2) PG violated the CBA by failing to maintain agreed-upon health care benefits.

The remaining three paragraphs concerned the remedy:

> 3) The Employer is directed to pay the amount necessary to maintain the specific health insurance benefit levels set forth [in the CBA] (ie. [*sic*], all increases that may be required to keep the contractual level of benefits), subject to and until a new collective bargaining agreement is

15

negotiated and reached between the parties.

4) Employees shall be made whole for any out-of-pocket monies paid as a result of the Employer's failure to maintain the contractual level of benefits.

5) This Award is final and binding. I shall retain jurisdiction, however, for the limited purpose of resolving any disputes that may arise in the implementation of the remedy granted in paragraph #4 herein.

The Award also noted that "a full Award and Opinion [was] to follow by mid-January."

On January 21, 2020, Arbitrator Nadelbach issued a 21-page Opinion, which noted that the Award had been "first transmitted to [the parties] via email prior to the end of the calendar year on December 30, 2019." The January 2020 Opinion provided the reasoning for the Arbitrator's rulings on the issues submitted for arbitration. In a footnote, the Opinion disposed of PG's LMRA Section 302 argument on its conclusion that "the collective bargaining agreement itself is the written commitment that satisfies any possible Section 302 claim." The Opinion ended in substantially the same five-paragraph Award contained in the Arbitrator's December 30, 2019 email.

16

On February 14, 2020, PG sought to vacate the Arbitration Award in federal court. PG styled its filing as a "Complaint" raising five "counts": I) violation of public policy; II) collateral estoppel; III) violation of LMRA Section 302; IV) manifest disregard of the law; and V) failure of the Award to draw its essence from the CBA. The filing sought to invoke the District Court's jurisdiction under both LMRA Section 301 and FAA Section 10, and Counts IV and V both referenced the FAA. The Complaint did not, however, reference FAA motions practice.

In response, the Union moved for Rule 12 dismissal of PG's action on grounds that it was untimely. The Union argued that the December 2019 Award was final, thus starting the limitations period for challenging the Award; that the applicable limitations period for LMRA Section 301 actions was 30 days; and that PG filed its Complaint more than 30 days after the Arbitrator issued the December 2019 Award. The Union also argued that PG failed to state a claim that the Award was unenforceable. The Union concurrently counterclaimed for enforcement of the Award pursuant to LMRA Section 301.

PG agreed that Rule 12's standards applied but also contended that Counts I, II, III, and V of the Complaint were brought under both the LMRA and the FAA, and that Count IV was brought under the FAA alone. Consequently, PG argued, the FAA's 90-day limitation period for motions to vacate applied, and PG's bid to vacate the arbitration award was timely. PG also argued that the December 2019 Award was an interim award that did not become final until the Arbitrator's January 2020 Opinion so, in turn, PG's Complaint was timely

17

under LMRA Section 301 because it was filed within 30 days of the January 2020 opinion.

The Magistrate Judge to whom the matter was referred largely agreed with the Union's arguments. Treating the Section 301 limitations period as jurisdictional, the Magistrate Judge recommended Rule 12(b)(1) dismissal of PG's action as untimely. *PG Publ'g Co. v. Newspaper Guild of Pitt.*, No. 2-20-cv-00236, 2020 WL 7211214, at *6–*12 (W.D. Pa. Sept. 14, 2020) (R. & R. of Lenihan, Mag. J.). In the alternative, the Magistrate Judge recommended Rule 12(b)(6) dismissal of PG's action for failure to state a claim. *Id.* at *13–*17.[11]

The District Court adopted the Magistrate Judge's recommendations. *PG Publ'g Co. v. Newspaper Guild of Pitt.*, No. 2-20-cv-00236, 2020 WL 7065834, at *1 (W.D. Pa. Dec. 3, 2020) (Op. of Horan, J.). It dismissed PG's action with prejudice on alternative bases: as time barred pursuant to Rule 12(b)(1), and for failure to state a claim pursuant to Rule 12(b)(6). It also entered an order for enforcement of the Arbitration Award in favor of the Union. *Id.* at *4. PG's timely appeal followed.

---

[11] In making these recommendations, the Magistrate Judge concluded that November 2019 email exchange between the parties and the December 2019 Award were "integral to or explicitly relied upon" in PG's Complaint, which included the January 2020 Opinion. Thus, the Magistrate Judge declined to convert the Union's motion to dismiss into a motion for summary judgment. *Id.* at *4.

18

III

A. Jurisdiction

The District Court had federal question jurisdiction over PG's LMRA Section 301 action pursuant to 28 U.S.C. § 1331.

If PG had properly moved to vacate the Arbitration Award pursuant to FAA Section 10—although, as we will explain, it did not—the District Court also would have had federal question jurisdiction over the motion[12] via the jurisdictional grant of LMRA Section 301. 29 U.S.C. § 185(a); *Teamsters*, 966 F.3d at 250 (concluding that there was federal question jurisdiction via LMRA Section 301 over the union's FAA motion); *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995) (same); *Indep. Lab'y Emps. Union, Inc. v. ExxonMobil Research & Eng'g Co.*, No. 3:18-cv-10835, 2019 WL 3416897, at *4 (D.N.J. July 29, 2019) (same).

We have jurisdiction to review the District Court's order pursuant to 28 U.S.C. § 1291.

---

[12] FAA motions must invoke an "independent jurisdictional basis," as the FAA does not itself "bestow . . . federal jurisdiction." *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (cleaned up).

19

## B. Standard of review

We exercise plenary review over dismissals for lack of subject matter jurisdiction. *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006). Here, the District Court determined that the limitations period for seeking judicial review of an arbitration award was a jurisdictional bar and accordingly granted dismissal on timeliness grounds for lack of subject matter jurisdiction. As we will explain, we agree with the District Court that PG's LMRA Section 301 action was untimely. But we conclude that the limitations period for Section 301 actions is not jurisdictional. Congress has not expressly made it so, nor has it implicitly done so through silence in the face of a long line of decisions treating the LMRA limitations period as jurisdictional. *Henderson* ex rel. *Henderson v. Shinseki*, 562 U.S. 428, 435–36 (2011) (holding that there must be "clear indication that Congress wanted the rule to be jurisdictional," although Congress "need not use magic words" (cleaned up)); *Hoosier Cardinal*, 383 U.S. at 704–05 (considering tolling principles immediately after holding that the timeliness of Section 301 suits should be determined by reference to the appropriate state statute of limitations).

Thus, we review the District Court's dismissal on timeliness grounds as a dismissal for failure to state a claim. *Petruska v. Gannon Univ.*, 462 F.3d 294, 303 (3d Cir. 2006) (reviewing Rule 12(b)(1) dismissal as a dismissal under Rule 12(b)(6) because the claims bar at issue was not

20

jurisdictional).[13]  As we do for dismissals for lack of subject matter jurisdiction, we exercise plenary review over dismissals for failure to state a claim.  In so doing, we construe factual allegations and reasonable inferences "in a light most favorable to the plaintiff," but we need not assume the truth of the plaintiff's legal conclusions.  *Oakwood Labs LLC v. Thanoo*, 999 F.3d 899, 903–04 (3d Cir. 2021) (cleaned up).

By contrast, if the District Court had ruled on an FAA motion to confirm or vacate an arbitration award, we would have reviewed its factual findings for clear error and its legal conclusions *de novo*.  *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012).

IV

We conclude, like the District Court, that PG's bid to vacate the Arbitration Award was untimely.  Although PG filed its Complaint within 90 days of the arbitrator's award, which is the limitations period applicable to motions to vacate under the FAA, PG's general references to the FAA in its Complaint

---

[13] Generally, a statute of limitations defense cannot be raised under Rule 12 because it is not one of the enumerated defenses "a party may assert . . . by motion" under the rule. FED. R. CIV. P. 12(b).  But in our Circuit, we permit such a motion pursuant to Rule 12(b)(6) "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Fried v. JP Morgan Chase Co.*, 850 F.3d 590, 604 (3d Cir. 2017) (quoting *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)).

are not sufficient to invoke FAA Section 10 as a means of seeking vacatur, distinct from its LMRA Section 301 action to vacate. PG's LMRA Section 301 action, albeit properly invoked, was untimely because the limitations period began with the December 2019 Award; the applicable limitations period is 30 days; and PG filed more than 30 days after the arbitrator issued the December 2019 Award.

### A. PG did not move to vacate the Award pursuant to the FAA.

In determining whether PG's filing labeled "Complaint to Vacate Arbitration Award" properly invoked the FAA, we look to both the substance of the filing and PG's manner of litigating this dispute. In *IFC Interconsult*, we concluded that IFC's application for confirmation of an arbitration award was a motion, not a pleading, notwithstanding the fact that it was labeled a "petition." 438 F.3d at 307–08. Substantively, IFC's filing opened with the words, "Petitioner IFC Interconsult, AG *moves* the court for an order." *Id.* at 308 (emphasis added). IFC also litigated its application for confirmation of the award in the manner of a motion. It filed a brief, a proposed order, and an appropriate affidavit alongside its application for confirmation, as required for motions practice under the U.S. District Court for the Eastern District of Pennsylvania's LOCAL R. CIV. P. 7.1. *Id.* at 307–08.

Thus, we concluded that SIP, the party opposing the confirmation of the arbitration award, was on notice that IFC was proceeding by motion under the FAA: "SIP cannot claim to be justifiably confused by the form of IFC's application." *IFC Interconsult*, 438 F.3d at 308. Notice was important in

22

that case because Rule 12 of the Federal Rules of Civil Procedure applies to pleadings but not to FAA motions, and SIP contended that it should have been afforded a "later opportunity to challenge the arbitration award on the merits" under Rule 12. *Id.* at 307–09.

By contrast, there was no such notice here that PG was proceeding by motion under the FAA—neither from the substance of PG's Complaint, nor from PG's manner of litigating this dispute. Substantively, PG's Complaint seeking to vacate the Arbitration Award was labeled and styled as a complaint. It raised five "Counts." And it did not contain any variation of the word "motion."

It is not enough that PG's Complaint made general reference to the FAA and that "Count IV," claiming that the Award was in "manifest disregard of the law," referred only to the FAA. That is because "the federal courts have often looked to the [FAA] for guidance in labor arbitration cases" involving LMRA Section 301, *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987), and courts have also looked to LMRA Section 301 cases for guidance on the FAA. *E.g.*, *Oxford Health Plans, LLC v. Sutter*, 569 U.S. 564, 569 (2013) (in articulating the standard for vacating an arbitration award under the FAA, citing, *inter alia*, *United Paperworkers*, 484 U.S. at 38)). *See also A&A Maint. Enters., Inc. v. Ramnarain*, 982 F.3d 864, 869 n.2 (2d Cir. 2020) ("[T]he body of law developed under [LMRA] Section 301 will at times draw upon provisions of the FAA, but by way of guidance alone." (quoting *Coca-Cola Bottling Co. of N.Y., Inc. v. Soft Drink & Brewery Workers Union*, 242 F.3d 52, 54 (2d Cir.

23

2001))).  PG's "Count IV," for example, relies on a basis for setting aside an arbitration award that is available under both LMRA Section 301 actions and FAA Section 10 motions. *E.g.*, *Tanoma Mining Co., Inc. v. Local Union No. 1269, UMWA*, 896 F.2d 745, 749–50 (3d Cir. 1990) (considering "manifest disregard of the law" standard in case involving an LMRA Section 301 action to vacate a labor arbitration award); *Indep. Lab'y Emps. Union, Inc. v. ExxonMobil Research & Eng'g Co.*, 11 F.4th 210, 216 (3d Cir. 2021) (considering "manifest disregard of the law" standard in case involving a FAA Section 10 motion to vacate).

It is also telling that PG has litigated this dispute as an ordinary civil action.  PG did not make explicit in any way that it was pursuing both an LMRA Section 301 complaint and a motion for vacatur under FAA Section 10, even though the two means of seeking to vacate an arbitration award prescribe distinct procedures.  See discussion *supra* Section I.  It has operated throughout this litigation as if the standards under Rule 12 apply to its bid to vacate the arbitration award.  It has never mentioned the standards applicable to FAA motions to vacate; neither has it referred to the standard of appellate review applicable to a District Court's ruling on an FAA motion to confirm or vacate an arbitration award.

Thus, we decline to read PG's Complaint as incorporating a motion to vacate the arbitrator's award pursuant to the FAA.  Even if PG had intended to move to vacate the Award under the FAA, the substance of its Complaint and its manner of litigating this dispute were

24

insufficient to put the Union and the District Court on notice that PG was proceeding via FAA motion.

## B.  PG's LMRA Section 301 action was untimely.

That leaves us with PG's Section 301 action to vacate the Award, filed more than 30 days after the arbitrator issued the December 2019 Award.  PG does not dispute that it was obligated to file its Section 301 action within 30 days of the date of the final arbitration award.  So our analysis ends—and the Union prevails—if the December 2019 Award was the final award.

Yet PG contends that the limitations period did not begin to run until the arbitrator issued his subsequent January 2020 Opinion, which in turn would mean that PG's filing was timely.  PG characterizes the December 2019 Award as an interim and incomplete award that was not yet ready for judicial review.  By PG's account, the December 2019 Award was not final in part because the arbitrator indicated that "he had substantive work left to perform": specifically, issuing the "Full Award and Opinion."  According to PG, it was not until the issuance of the January 2020 Opinion that the arbitrator had completed all substantive tasks relating to the arbitration.

We are not persuaded.  Yet because we are reviewing for dismissal pursuant to Rule 12(b)(6), we must first determine whether the finality of an arbitration award is a question of fact or of law before considering whether dismissal is warranted.  If finality is a question of fact, Rule 12(b)(6) dismissal of PG's action as time barred is inappropriate unless its action was facially untimely.  *Fried*, 850 F.3d at 604.  Put

25

differently, a plausible factual dispute over the timeliness of PG's action precludes us from affirming dismissal on the Union's time-bar defense at the motion-to-dismiss stage. By contrast, if finality is a question of law, we may analyze the finality of the December 2019 Award without any deference to PG's version of the events in this dispute. *Thanoo*, 999 F.3d at 904 (reciting Rule 12(b)(6) standards).

We point to four reasons in holding that the finality of an arbitration award is to be determined as a matter of law from the award itself and the written arbitration record. First, we have never framed finality as a matter of factual circumstances extrinsic to the award. *Pub. Serv. Elec. & Gas Co. v. Sys. Council U-2*, 703 F.2d 68, 69–70 (3d Cir. 1983) (considering the language of the award); *Union Switch & Signal Div. Am. Standard, Inc. v. United Elec., Radio & Mach. Workers of Am.*, 900 F.2d 608, 610–11 (3d Cir. 1990) (treating the finality analysis in *Sys. Council U-2* as good law).

Second, "the parties to arbitration proceedings need reliable guidelines to enable timely compliance" with the time to seek judicial review of an arbitration award. *Fradella v. Petricca*, 183 F.3d 17, 20 (1st Cir. 1999). In the distinct but analogous context of the time to appeal from final District Court judgments,[14] we have endeavored to "make clear when the time to appeal is at hand" by making the finality of

[14] The rule for the finality of arbitration awards (the "complete arbitration rule") is animated by similar policies as the final judgment rule, but only the latter is jurisdictional. *Union Switch*, 900 F.2d at 612.

26

judgments a matter of "mechanical application." In re *Cendant Corp. Sec. Litig.*, 454 F.3d 235, 245 (3d Cir. 2006). Similarly, treating the finality of arbitration awards as a question of law would make for a more cut-and-dried exercise. Treating finality as a question of fact, by contrast, would create uncertainty with respect to the commencement of the limitations period for seeking to vacate or confirm an arbitration award.

Third, our approach is consistent with how other circuits have analyzed finality. We acknowledge that some courts have discussed the intent of the arbitrator in analyzing whether an award is a "final determination on the issues submitted," *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980), and that "intent" seems at first blush to be a factual issue not capable of resolution at the motion to dismiss stage. But a closer review shows that those courts have focused on intent as expressed in the language of the putative final award itself.[15] For example, the Seventh Circuit held that an award was final because "nothing in the . . . *award* indicates that the [Joint Arbitration Board] believed that any issues

---

[15] *Fradella*, 183 F.3d at 19 (1st Cir. 1999) (examining content of putative final award); *A/S Siljestad v. Hideca Trading, Inc.*, 678 F.2d 391, 391–92 (*per curiam*) (2d Cir. 1982) (same); *Smart*, 315 F.3d at 724–26 (7th Cir. 2002) (same); *Legion Ins. Co. v. VCW, Inc.*, 198 F.3d 718, 719–20 (8th Cir. 1999) (same); *Millmen Local 550, United Bhd. of Carpenters and Joiners of Am., v. Wells Exterior Trim*, 828 F.2d 1373, 1374–77 (9th Cir. 1987) (same).

27

remained to be decided." *McKinney Restoration, Co., Inc., v. Ill. Dist. Council No. 1*, 392 F.3d 867, 872 (7th Cir. 2004) (emphasis added). Examining the award itself, the court concluded that the award was final because it determined liability and the remedy; it did not reserve jurisdiction; and it required the Union to file a new grievance if it were to discover an additional violation of the CBA. *Id.* ("That is the *language* of a final award." (emphasis added)).[16] We agree with the Seventh Circuit that it makes sense to infer intent from the attributes of the award and arbitration record. We do not see a need to turn to extrinsic evidence regarding an arbitrator's intent, as "absent consent of the parties, it is generally improper for an arbitrator to interpret, impeach or explain a final and binding award." *Local P-9, United Food & Com. Workers Int'l Union v. George A. Hormel & Co.*, 776 F.2d 1393, 1395 (8th Cir. 1985) ("Federal courts have [the] power to remand an arbitration award to the arbitrator where the award is *patently* incomplete, ambiguous or inconsistent." (emphasis in original)

---

[16] *But see id.* at 869 (framing the employer's finality arguments as both "factually and legally insupportable"); *id.* at 872 ("Where the *evidence* establishes that the arbitrator does not believe the assignment is completed, the award is not final and appealable." (emphasis added)); *Fradella*, 183 F.3d at 19 n.2 (applying summary judgment standard in analyzing the finality of the arbitration award); *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998) ("When reviewing a district court's decision that an award is sufficiently final to be confirmed, we examine the decision for clear error only.").

28

(collecting cases and citing the *Code of Professional Responsibility of Arbitrators of Labor Management Disputes*)).[17] Accordingly, we have noted in the context of whether to enforce an award that, "under ordinary circumstances[,] we would not sanction calling an arbitrator to testify, as the written record would suffice to permit the court to rule on enforcement *vel non*." *Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 994 (3d Cir. 1997); *see also Legion Ins. Co.*, 822 F.2d at 543 (noting that courts have "repeatedly condemned efforts to depose members of an arbitration panel to impeach or clarify their awards" (citing *Andros Compania Maritima v. March Rich & Co*, 579 F.2d 691, 702 (2d Cir. 1978)).[18]

Fourth, the finality analysis is substantially the same whether a party seeks judicial review of an arbitration award

---

[17] *But see id.* at 1396 (holding that finality was a "disputed issue of fact" for which "summary judgment was inappropriate").

[18] *Cf. Local P-9*, 776 F.2d at 1395–96 (affirming District Court's exclusion of all but one section of the arbitrator's affidavit regarding his intent, although concluding that the District Court should have admitted the section that did not "impeach the initial award or explain the arbitrator's decision-making process, but merely describe[d] the procedural process which the arbitrator allegedly told the parties he would follow")*; but see A/S Siljestad*, 678 F.2d at 392 (considering affidavit from chair of the arbitration panel in determining the intent of the arbitrators).

29

under LMRA Section 301 or under FAA Section 10. *Compare Union Switch*, 900 F.2d at 610–11 (discussing finality of an arbitration award in an LMRA Section 301 case) *with Michaels*, 624 F.2d at 413–14 (discussing the same in an FAA Section 10 case). If we were to treat finality as a question of fact, we would risk introducing discovery—possibly extensive discovery—into FAA proceedings, which are not intended to involve complicated factual determinations. See discussion *supra* Section I.

Thus, we review finality as a legal question and arrive at the same conclusion as the District Court reached here: The December 2019 Award was final and started the limitations period for seeking judicial review of the Award. An arbitration award is not final if it reveals that the arbitrators have yet to resolve each issue that the parties have empowered the arbitrators to decide. *Sys. Council U-2*, 703 F.2d at 69–70; *accord Union Switch*, 900 F.2d at 610–11. Accordingly, we have held that an award is not final if the arbitrators have decided liability but not the remedy when they are authorized to decide both issues. *Sys. Council U-2*, 703 F.2d at 69–70 ("Although the [arbitration] panel did not prescribe a remedy, the [parties'] submission authorized the panel to address that issue"). We have not previously articulated a test for when an award is final but are persuaded by the approach taken by our sister circuits. Like them, we hold that an arbitration award is final if it "evidences the arbitrators' intention to resolve all claims submitted in the demand for arbitration," *Fradella*, 183 F.3d at 19, and it "resolve[s] them definitively enough so that the rights and obligations of the two parties, *with respect to the*

30

*issues submitted*, do not stand in need of further adjudication." *Rocket Jewelry Box*, 157 F.3d at 176 (emphasis in original).

Here, the December 2019 Award unambiguously indicates that it is a final determination of all the issues the parties authorized them to decide. The December 2019 Award determined that the Union's grievance was arbitrable and that PG, as the Union contended, breached the parties' CBA. It provided a forward-looking remedy, directing PG to begin meeting its contractual obligations under the CBA. It also prescribed a specific retroactive remedy: "Employees shall be made whole for any out-of-pocket monies paid as a result of the Employer's failure to maintain the contractual level of benefits." It ended with the note that the Award was "final and binding." The Award reserved jurisdiction only "for the limited purpose of resolving any disputes that may arise in the implementation of the remedy granted . . . herein." As the Seventh Circuit said in *McKinney*: "That is the language of a final award." 392 F.3d at 872. Nothing in the January 2020 Opinion suggests otherwise. The January 2020 Opinion substantially repeats the language of the December 2019 Award and describes the Award as having been "first transmitted to [the parties] via email prior to the end of the calendar year on December 30, 2019."

In arguing that the Award was not final until the arbitrator's January 2020 Opinion, PG essentially seeks to graft a written-opinion requirement onto our finality analysis. It contends that writing the January 2020 Opinion was a "substantive task" that the Arbitrator had yet to complete as of his issuance of the December 2019 Award. But PG is unable

31

to point to a case—nor have we found one—that has required an arbitrator to explain his award so that it shall be deemed final. At best, PG's argument is based on a misinterpretation of *McKinney*, where the Seventh Circuit read a District Court opinion as holding: "Where a substantive task remained for the arbitrator to perform, the ruling was not final." 392 F.3d at 871 (discussing *Ameritech Servs., Inc. v. Local Union No. 336*, No. 96 C 5897, 1997 WL 222439, at \*5 (N.D. Ill. Apr. 30, 1997)). But the Seventh Circuit was not referring to writing an opinion in its discussion of substantive tasks. It was referring to "the arbitrator['s] . . . complete determination of every issue submitted to him." *Id.* Specifically, the Seventh Circuit observed that the District Court had held that an arbitration award was not final because the arbitrator had yet to "fashion the appropriate remedy." *Id.* at 872 (citing *Ameritech*, 1997 WL 222439, at \*2–\*3, \*7).

In declining PG's invitation to create a written-opinion requirement, we stay the course in limiting our finality analysis to an examination of the attributes of the award, including whether the arbitrator has decided all of the issues submitted for arbitration. We are mindful that complying with the limitations period for seeking to vacate an arbitration award—by filing a complaint or FAA motion—requires substantive argument in a way that filing a notice of appeal from a District Court-judgment does not. FED. R. APP. P. 3(c). But because a final arbitration award is one that decides all issues, we are confident that a final arbitration award provides sufficient information for a party to write an LMRA Section 301 complaint or an FAA Section 10 motion challenging the

32

award.[19]  Moreover, to the extent a subsequent written opinion may be filed that elucidates or clarifies any issues, parties are certainly free to supplement their filings.

V

We will affirm the District Court's order dismissing PG's LMRA Section 301 as time barred.

---

[19] Here, for example, the December 2019 Award determined that PG was liable for breach of the CBA, so PG could have fairly assumed that the Arbitrator was not convinced by PG's Section 302 argument.