**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: March 23, 2022
Date Decided: June 21, 2022

F. Troupe Mickler IV, Esquire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19801

Daniel J. Goettle, Esquire
Jeffrey J. Lyons, Esquire
Baker & Hostetler LLP
1201 North Market Street
Suite 1402
Wilmington, Delaware 19801

RE:   *MHP Management, LLC. v. DTR MHP Management, LLC, et al.*,
C.A. No. 2020-0365-LWW

Dear Counsel:

This letter decision addresses the parties' cross-motions for summary judgment regarding a March 23, 2020 arbitration award. The plaintiff seeks an order confirming the award; the defendants seek an order vacating it. For the reasons explained below, the plaintiff's motion is granted and the defendants' motion is denied.

## I.    FACTUAL BACKGROUND

Until recently, the principals of plaintiff MHP Management, LLC ("MHP") and of defendants DTR MHP Management, LLC ("DTR"), Colonial Kitchen, LLC, and WaterTree Capital, Inc. managed a group of investment funds that own and

operate mobile home parks throughout the United States.[1]  On March 24, 2016, the parties formed Delaware limited liability company MHCA Management, LLC (the "Company") to manage one of the parties' investment funds—MHC America Fund, LLC, a $150 million fund holding interests in various mobile home communities.[2] The Company was originally managed by MHP, DTR, Colonial Kitchen, and WaterTree, each of whom are signatories to a 2016 Limited Liability Company Agreement (the "LLC Agreement").

### A.    The 2017 Written Consent

On April 5, 2017, a document titled "Written Action of the Members of MHCA Management, LLC" was executed (the "2017 Written Consent").[3]  The

---

[1] Am. Compl. ¶ 10 (Dkt 20).  MHP is a Florida limited liability company that is managed by JRS MHP Management, LLC, a Florida limited liability company, that is itself managed by Jamie and Ryan Smith.  *See* Transmittal Decl. of F. Troupe Mickler IV in Supp. of the Pl.'s Opening Br. ("Mickler Decl.") Ex. 1 ("Award") at 3-4 (Dkt. 32).  DTR is a Colorado limited liability company that is managed by Dave Reynolds.  *Id.*  Colonial Kitchen is a Texas limited liability company that is managed by Frank Rolfe.  *Id.*  WaterTree is a California corporation managed by Eric Siragusa.  *Id.*

[2] Am. Compl. ¶¶ 8, 10; *see* Mickler Decl. Ex. 2 *("*LLC Agreement") § 3.1.

[3] Decl. of Jeffrey J. Lyons in Supp. of Defs.' Opening Br. ("Lyons Decl.") Ex. C (Dkt. 36).

document purportedly appointed DTR as managing member of the Company.[4]  MHP

has disputed the validity of the 2017 Written Consent.[5]

### B.     The Unsuitability Determination

In a letter dated September 5, 2018, MHP sent a Notice of Unsuitability to the

defendants.[6]     The  notice  stated  that  MHP  was  issuing  an  "Unsuitability

Determination" because MHP had concluded that the defendants committed acts

constituting "Good Cause" under the LLC Agreement.[7]  MHP's stated reasons for

this determination included its belief that the defendants had engaged in a self-

dealing transaction and had sold property without MHP's knowledge.[8]

The LLC Agreement defines "Unsuitability Determination," in relevant part,

as the "Unaffected Members'" determination that another member "has committed

any act or omission constituting Good Cause."[9]  "Good Cause" is defined to include

"a  good  faith  determination  that  a  Member  has  committed  an  act  or  omission

constituting: (i) a material breach of the Member's duties or authority hereunder;

---

[4] *Id.*

[5] *See* Lyons Decl. Ex. E.

[6] Lyons Decl. Ex. I.

[7] *Id.*

[8] *Id.*

[9] LLC Agreement § 1.

(ii) willful or wanton misconduct; or (iii) fraud."[10]  The LLC Agreement further provides that a member who is the subject of an Unsuitability Determination "shall automatically be removed" as a member of the Company.[11]

### C. The Arbitration

On September 13, 2018, the defendants (and purportedly the Company) initiated arbitration proceedings against MHP to challenge the validity of the Unsuitability Determination.[12]  The LLC Agreement mandates binding arbitration of any disputes between the parties and requires that Delaware law be applied to any such dispute.[13]  The LLC Agreement also provides that an arbitrator lacks "any authority, power or right to alter, change, amend, modify, add to, or subtract from" the LLC Agreement's provisions.[14]

In their Statement of Claims, the defendants argued that MHP's Unsuitability Determination was not made in good faith and sought a finding that the Unsuitability Determination was invalid.[15]  A panel of three arbitrators was selected by the parties,

---

[10] *Id.*

[11] *Id.* § 12.1.C.

[12] Lyons Decl. Ex. K.

[13] LLC Agreement §§ 14.1, 15.12.

[14] *Id*. § 14.5.

[15] *See* Lyons Decl. Exs. K, L; *see also id.* Ex. Q.

which received multiple submissions and briefs during the arbitration. A seven-day evidentiary hearing was held before the panel in September 2019. The record considered by the panel included 433 documentary exhibits and the testimony of eight witnesses.

On March 23, 2020, the arbitration panel issued the Arbitrators' Reasoned Award—a 54-page written decision (the "Award"). The panel concluded that DTR, Colonial Kitchen, and WaterTree did not carry their burden of showing that the Unsuitability Determination was not issued in good faith.[16] It determined that MHP's "September 5, 2018 Unsuitability Determination was valid."[17] The panel also concluded that it was unnecessary to determine the "legal effect" of the 2017 Written Consent in reaching its decision.[18]

### E. This Litigation

On May 13, 2020, the plaintiff filed a Verified Complaint to Confirm Arbitration Award in this court, alleging that the defendants had refused to accept the Award and continued to act as members of the Company.[19] The case was stayed

---

[16] Award at 52-53.

[17] *Id.* at 46-54.

[18] *Id.* at 25, 43, 49, 51-52.

[19] Dkt. 1.

by stipulation pending the outcome of earlier-filed litigation in Florida state court, whereby the defendants sought to vacate the Award.[20] The Florida court dismissed that action on October 28, 2020 and that decision was affirmed on appeal on August 24, 2021.[21]

On August 29, 2021, this court entered an order lifting the stay and the plaintiff filed an amended complaint the following day.[22] The defendants answered that complaint and advanced a counterclaim seeking to vacate the Award.[23]

The parties proceeded to cross-move for summary judgment on November 1, 2021. The plaintiff's motion for summary judgment asks that the court confirm the Award.[24] The defendants' motion for summary judgment asks that the court vacate the Award.[25] Briefing on the motions was completed on January 14, 2022. Oral argument was held on March 23, 2022.

---

[20] Dkt. 11.

[21] *See* Dkt. 19

[22] Dkts. 19, 20.

[23] Dkt. 23.

[24] *See* Dkt. 32.

[25] *See* Dkt. 34.

## II.    LEGAL ANALYSIS

Summary judgment is appropriate under Court of Chancery Rule 56 where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[26]  A summary judgment motion "provides an appropriate judicial mechanism for reviewing an arbitration award, because the complete record is before the court and no *de novo* hearing is permitted."[27]  This is so under either the Delaware Uniform Arbitration Act or the Federal Arbitration Act ("FAA").[28]

The parties' arbitration agreement does not reference the Delaware Uniform Arbitration Act and the parties have briefed the dispute under the FAA.[29]  The Court of Chancery has jurisdiction to enforce or vacate arbitration awards that do not reference the DUAA "in conformity with the [FAA] and such general principles of

---

[26] Ct. Ch. R. 56(c).

[27] *Wier v. Manerchia*, 1997 WL 74651, at \*7 (Del. Ch. Jan. 28, 1997); *see also Beebe Med. Ctr., Inc. v. InSight Health Servs. Corp.*, 751 A.2d 426, 431 (Del. Ch. 1999) (explaining that a summary judgment motion is the "common [method] for this court to determine whether to vacate or confirm an arbitration award").

[28] *See TD Ameritrade, Inc. v. McLaughlin, Piven, Vogel Secs., Inc.*, 953 A.2d 726, 730-31 (Del. Ch. 2008).

[29] LLC Agreement § 14.

law and equity as are not inconsistent with that Act."[30]   Section 9 of the FAA provides that if a party applies for an order confirming an arbitration award within one year after the award is made, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in" other provisions of the FAA.[31]

The Supreme Court has explained that only the statutorily enumerated circumstances in the FAA provide grounds for a court to grant vacatur or modification of an arbitration award.[32]   "Of course, '[n]either the FAA nor the Delaware Uniform Arbitration Act derogates this Court's inherent equity jurisdiction to enforce, modify or vacate arbitration awards.'"[33]   The review it must

---

[30] 10 *Del. C.* § 5702(c); *see Gulf LNG Energy, LLC v. Eni USA Gas Mktg. LLC*, 242 A.3d 575, 579 n.11 (Del. 2020) ("Because the parties['] [agreement] did not designate the Delaware Uniform Arbitration Act, the FAA governs their arbitration.").

[31] 9 U.S.C. § 9.

[32] *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008) ("We now hold that §§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification."); *Gulf LNG Energy*, 242 A.3d at 583 ("Once an arbitration is completed, however, and the parties have agreed that the FAA controls their arbitration, Sections 10 and 11 of the FAA provide the exclusive means to vacate, modify, or correct the award.").

[33] *TD Ameritrade*, 953 A.2d at 732 (quoting *SBC Interactive, Inc. v. Corp. Media P'rs*, 1998 WL 749446, at *1 (Del. Ch. Oct. 7, 1998)).

conduct, however, is governed by "one of the narrowest standards of judicial review in all of American jurisprudence."[34]

"Arbitration awards . . . are not lightly disturbed, and '[c]ourts must accord substantial deference to all decisions of arbitrators.'"[35] "It is not enough for petitioners to show that the panel committed an error—or even a serious error."[36] Rather, "[t]o successfully convince the Court to vacate the award of an arbitration panel, the movant must show 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.'"[37]

The defendants contend that the Award must be vacated because the arbitration panel exceeded its authority and because the panel's Award was not final and definite. The plaintiff disagrees. For the reasons discussed below, the defendants' arguments fall well short of the high bar they must meet to obtain vacatur of the Award. The Award is confirmed.

---

[34] *Gov't Empls. Ins. Co. v. Progressive Direct Ins. Co.*, 2016 WL 6477026, at *4 (Del. Ch. Nov. 2, 2016) (citation omitted).

[35] *Agspring, LLC v. NGP X US Hldgs., L.P.*, 2022 WL 170068, at *3 (Del. Ch. Jan. 19, 2022) (quoting *TD Ameritrade*, 953 A.2d at 732).

[36] *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)).

[37] *Agspring*, 2022 WL 170068, at *3 (quoting *TD Ameritrade*, 953 A.2d at 732-33).

## A.    The Arbitration Panel Did Not Exceed Its Powers

The defendants argue that the Award should be vacated under Section 10(a)(4) of the FAA, which states that a court may vacate an arbitration award "where the arbitrators exceeded their powers."[38]  A party seeking to vacate an arbitration award on that basis "bears a heavy burden."[39]  The Delaware Supreme Court has explained that an arbitrator exceeds its powers when acting "in manifest disregard of the law."[40]  That is, vacatur is available where "the arbitrator (1) knew of the relevant legal principles, (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it."[41]

According to the defendants, the arbitration panel exceeded its powers by ignoring the express terms of the LLC Agreement in favor of rewriting or modifying them.[42]  The panel did so, the defendants contend, by effectively removing DTR as

---

[38] 9 U.S.C. § 10(a)(4).

[39] *Oxford Health*, 569 U.S. at 569.

[40] *Auto Equity Loans of Del., LLC v. Baird*, 232 A.3d 1293, 2020 WL 2764752, at *3 (Del. 2020) (TABLE).

[41] *Aspring*, 2022 WL 170068, at *4 (quoting *SPX Corp. v. Garda USA, Inc.*, 94 A.3d 745, 750 (Del. 2014)).

[42] Defs.' Opening Br. 17-32 (Dkt. 32).

the Company's managing member in disregard of the 2017 Written Consent and by modifying the unanimous consent requirement for an Unsuitability Determination.

On the first issue, the parties would have the court wade into a debate about whether the 2017 Written Consent was valid and, thus, whether DTR was the managing member of the Company. But those factual disputes are irrelevant to my determination of whether the Award should be confirmed or vacated. Simply put, the 2017 Written Consent was not ignored or flouted by the panel.

The panel concluded that the 2017 Written Consent was not determinative of the question presented to them for resolution. The Award explains that "[h]aving considered the issue" of the legal effect of the 2017 Written Consent "at length," the panel did not believe it would be "prudent" to resolve it.[43] Moreover, the panel "conclude[d] that a determination as to the technical legal effect of the 2017 [Written Consent] would not change its conclusion with respect to any issue" before it.[44] Instead, the panel's decision rested on "the validity, under the terms of the LLC Agreement," of MHP's Unsuitability Determination.[45]

---

[43] Award at 25.

[44] *Id.*

[45] *Id.* Thus, whether the 2017 Written Consent was valid is not (as the defendants argue) a genuine issue of material fact precluding the entry of summary judgment in MHP's favor. In determining whether an arbitration award should be vacated, this court "is not to pass

The arbitration panel read Article 12 of the LLC Agreement to provide that if the Company's "Unaffected Members" (*i.e.*, the members not accused of committing a material breach) made a good faith determination that another member had committed a material breach of that member's duties, the Unaffected Members could make an Unsuitability Determination against the breaching member.[46] The panel went on to determine that MHP was the sole Unaffected Member under the LLC Agreement and that MHP's Unsuitability Determination was effective.[47]

That reading of the LLC Agreement cannot properly be disturbed by this court. When parties agree to submit questions of contract interpretation to an

---

an independent judgment on the evidence or applicable law." *TD Ameritrade*, 953 A.2d at 733 (quoting *Audio Jam, Inc. v. Fazelli*, 1997 WL 153814, at *1 (Del. Ch. Mar. 20, 1997)). I therefore decline to address the various arguments about the significance, applicability, and effect of the 2017 Written Consent on the merits of the matter placed before the panel.

[46] Section 12.2 of the LLC Agreement provides that "[u]pon the occurrence of an Unsuitability Determination [against a member] and after the expiration of any applicable cure (if any), the Company shall promptly exercise its right to redeem" the members interest in the company at a set price. LLC Agreement § 12.2.

[47] The definition of the term "Unaffected Members" is not obvious under the plain language of the LLC Agreement. The term is defined to mean "those Members other than an Affected Member." *Id.* § 1. The term "Affected Member" is defined to mean "any Member that is an Unsuitable Person." *Id.* But a vote of the Unaffected Members is required to find that a member is an Unsuitable Person. *Id.* Faced with this circular definition, the arbitration panel interpreted the LLC Agreement to provide that a member is not an Unaffected Member "with respect to any determination of its own Unsuitability and is also disqualified from deliberating or voting on determinations of Unsuitability for other Members if those determinations are based on 'related matters.'" Award at 41.

arbitrator, a court reviewing an arbitration award "is confined to ascertaining whether the award draws its essence from the contract."[48] The only question for the court "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong."[49] Here, that question must be answered in the affirmative.

The panel similarly did not exceed its authority with regard to the second issue of contract interpretation raised by the defendants.[50] The defendants argue that the panel "rewrote" Section 7.2 of the LLC Agreement by requiring unanimous consent for actions taken by the Company that the LLC Agreement permitted to be accomplished by a majority or super-majority vote. The panel did not, however,

---

[48] *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 30 (1987); *MarkDutchCo 1 B.V. v. Zeta Interactive Corp*, 2021 WL 3503805, at *5 (3d Cir. Aug. 10, 2021) ("Because the Arbitrator's decision 'dr[ew] its essence from the contract,' we are unpersuaded that he 'act[ed] outside the scope of his contractually delegated authority.'" (quoting *Oxford Health*, 569 U.S. at 569)).

[49] *Oxford Health*, 569 U.S. at 569; *see also United Paperworkers*, 484 U.S. at 30 ("As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the court cannot overturn his decision simply because it disagrees with his factual findings, contract interpretations, or choice of remedies.").

[50] Section 7.2 of the LLC Agreement provides that "each Member . . . shall be entitled to vote on all matters that provide for a vote of the Members and in accordance with the Member's Membership Interest." LLC Agreement § 7.2. Certain actions require the unanimous consent of all of the members, while other actions require the consent of members holding either a majority or super majority of the Company's membership interests. *Id.*

conclude that unanimous consent was required for the transactions that led to the Unsuitability Determination. Rather, the Award explained that the lack of a formal vote "legitimize[d] MHP's concerns that [the defendants] were able to act and had acted without regard to MHP's interests" and supported the conclusion that the MHP's Unsuitability Determination was made in good faith.[51]

Accordingly, the panel did not exceed its powers. Its decision not to consider any legal effect of the 2017 Written Consent falls short of the kind of error that could justify vacatur. The panel's determinations were plainly based on its interpretation of the LLC Agreement. I therefore decline to vacate the Award.

### B. The Award Is Final and Definite

The defendants next contend that the arbitration panel did not execute a final award. Under Section 10(a)(4) of the FAA, a court may vacate an arbitration award where the arbitrators "so imperfectly executed [its powers] that a mutual, final, and definite award upon the subject matter submitted was not made."[52] A final arbitration award must "evidence[] the arbitrators' intention to resolve all claims submitted in the demand for arbitration and . . . resolve them definitively enough so

---

[51] Award at 49.

[52] 9 U.S.C. § 10(a)(4).

that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication."[53]

Once again, the parties' arguments concern the 2017 Written Consent. The defendants assert that the arbitration panel imperfectly executed its powers by declining to consider and determine the effect of the 2017 Written Consent. In refuting this argument, MHP points to the language of the Award itself which discusses the panel's treatment of the 2017 Written Consent.

As discussed above, the panel stated that it had considered the matter of the 2017 Written Consent "at length."[54] The Award acknowledged that "even after the April 2017 Written Consent was signed, all of the members of [the Company] acted in a manner consistent with the terms of the LLC Agreement."[55] The panel did not, however, opine on the validity of the 2017 Written Consent or its legal effect.

But it did not need to do so to issue a final and definite award. The validity of the 2017 Written Consent was not a claim submitted in the defendants' demand

---

[53] *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 323 (3d Cir. 2021) (internal quotations omitted); *Astrum Fund I GP, LP v. Maracci*, 2022 WL 252343, at \*6 (Del. Ch. Jan. 27, 2022) ("In general, '[a]n arbitration award is not final if it reveals that the arbitrators have yet to resolve each issue that the parties have empowered the arbitrators to decide.'" (quoting *PG Publ'g*, 19 F.4th at 323)).

[54] *Supra* at note 43 (quoting Award at 25).

[55] Award at 25.

for arbitration.[56]   The defendants' sole claim concerned whether the plaintiff's Unsuitability Determination had been made in good faith.[57]  That issue was decided by the panel, which concluded that a determination of the legal effect of the 2017 Written Consent was irrelevant to the outcome of the matters properly before it.[58]  It does not fall to this court to second-guess that decision.

## III.   CONCLUSION

For the reasons stated above, there is no basis to vacate the arbitration panel's Award.  The plaintiff's motion for summary judgment seeking an order confirming the Award is granted and the defendants' motion for summary judgment seeking to vacate the Award is denied.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

---

[56] Lyons Decl. Exs. K, L.

[57] Lyons Decl. Exs. K, L.

[58] Award at 25.